

Mark J. Lesko
2317 Montauk Hwy
Bridgehampton, NY 11932
T: +1 631-994-2408
mark.lesko@gtlaw.com

April 10, 2023

**By ECF**
Honorable Joan M. Azrack
United States District Court, E.D.N.Y.
100 Federal Plaza
Central Islip, New York 11722

      Re:    *Myers v. County of Nassau, et al.*, Case No. 22-cv-7023 (JMA) (LGD)

Dear Judge Azrack:

Pursuant to your Honor's Individual Rule IV.B, on behalf of the County of Nassau ("County"), the Nassau County Civil Service Commission ("CSC"), and the Nassau County Police Department ("NCPD") (collectively "Defendants"), we respectfully request a pre-motion conference or a briefing schedule regarding Defendants' anticipated motion to dismiss.

## I.       Nature of the Case

NCPD applicants must pass a competitive written exam ("Exam") and a series of post-Exam evaluations administered by the CSC. Complaint ¶ 24. Here, Plaintiff, a Black male, alleges violations of the Equal Protection Clause of the Fourteenth Amendment and the New York State Human Rights Law ("NYSHRL"). Plaintiff passed the Exam and the physical agility stage of the hiring process, but failed the background investigation because he had 13 traffic tickets, several of which resulted from his failure to remedy previously cited infractions. The public record shows various other applicants similarly disqualified for traffic offenses. Indeed, such conduct, regardless of any protected characteristic of the applicant, is repeatedly deemed a disqualifying factor. *In re Amato v. County of Nassau, et al.*, Index No. 604214/2021, NYSCEF Doc. No. 23 (Sup Ct, Nassau County, Jul. 6, 2021) (it was not arbitrary and capricious to conclude applicant's past conduct of recklessness, as exhibited by his driving record, could impact his fitness to uphold law and order); *Dais v. County of Nassau, et al.*, Index No. 609760/2018, NYSCEF Doc Nos. 3, 20 (Sup Ct, Nassau County, Dec. 4, 2018) (upholding disqualification of a Greek Orthodox applicant because his driving record evidenced "a record of disrespect for the requirements and processes of the law").[1]

The Complaint contains no factual allegation that the CSC intentionally discriminated against Plaintiff or even was aware of Plaintiff's race. Moreover, no municipal custom or practice is shown as the Complaint identifies no other individual's circumstances besides Plaintiff's, purportedly amounting to

---

[1] The Court may take judicial notice of the *Amato* and *Dais* decisions. *See, e.g.*, *Doe v. State University of New York Purchase College*, 2022 WL 2972200, n. 3, n. 4 (S.D.N.Y. Jul. 27, 2022) (taking judicial notice of the Second Department's decision on Plaintiff's Article 78 petition).

discrimination.[2] The Complaint also fails to allege any specific employment practice disparately impacting Plaintiff or any other individual. Rather, Plaintiff's allegations concern the entire post-Exam process. No plausible inference of a Constitutional violation arises here. As summarized below and will be detailed further in full motion papers, the Complaint should be dismissed.

## II.     The Complaint Must Be Dismissed As Against the NCPD and the CSC

The NCPD and the CSC are "administrative arms" of the County that lack "legal identit[ies] separate and apart from the [County] and, therefore, cannot sue or be sued." *Rose v. County of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012); *Gurrieri v. County of Nassau*, 2017 WL 3432208, at *6 (E.D.N.Y. Aug. 9, 2017).

## III.    No Claim Under the Equal Protection Clause or the NYSHRL Has Been Alleged

### A.     Plaintiff Has Not Plausibly Alleged Discriminatory Intent or Disparate Impact Under the NYSHRL

To state a claim under the Equal Protection Clause, Plaintiff must sufficiently allege Defendants acted with discriminatory intent. *Burgis v. New York City Dept. of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015); *Vil. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Discriminatory purpose "implies that the decision maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

Plaintiff fails these tests.[3] Indeed, Plaintiff does not allege any facts showing CSC was *aware* of his race. Moreover, while Plaintiff summarily alleges Defendants' hiring process generally is discriminatory due to a "subjective, post-written examination screening process" (Complaint, ¶ 8), Plaintiff fails to allege facts showing the subjective process was applied intentionally in a discriminatory manner or to "discriminatorily weed out otherwise qualified non-white applicants." Plaintiff's speculative and summary allegations that the process *could* be administered in a discriminatory manner are insufficient.[4]

Plaintiff's resort to "statistics" also does not meet Constitutional standards because the statistics are not "of a level that makes other plausible non-discriminatory explanations very unlikely." *Burgis*, 798 F.3d at 69. Given that the CSC commonly disqualifies applicants for driving records like Plaintiff's and those decisions are judicially sustained (*see In re Amato* and *Dais*, *supra*), the allegations fail to

---

[2] Plaintiff is not adequate to represent the class, as defined in the Complaint, since he passed each stage of the hiring process before the background check, and did not participate in any stage after the background check. *See Local 3621 v. City of New York*, 2022 WL 17175798 (S.D.N.Y. Nov 22, 2022).

[3] Ignoring his failure to allege how the CSC knew his race, Plaintiff alleges the basis for his disqualification was "obviously pretext" because (i) he was later hired by the NYPD, and (ii) the NCPD allegedly hired two white applicants ("Comparators") with records "far more troubling" than Plaintiff's. Complaint, ¶¶ 5-6. Plaintiff cites just 2 of over 1,000 people hired as purported comparators, ignoring those similarly situated to him (i.e., disqualified for traffic offenses). The Complaint does not support an inference of intent to violate the U.S. Constitution. Plaintiff was disqualified by the CSC and appealed. When his appeal was rejected, Plaintiff failed to timely file an Article 78 proceeding. And so, this lawsuit seeks to end run Plaintiff's failure to challenge in state court the CSC's decision.

[4] *See* Complaint, ¶¶ 92(i), 93. Plaintiff's allegations about the post-Exam process are alleged "on information and belief." *Id.*

eliminate the plausible alternative explanation that repeat traffic offenses by an applicant demonstrate disqualifying disrespect for the process of law and order.

Moreover, as a matter of law, Plaintiff's disparate impact claim under NYSHRL – built on these statistics – fails because he never alleges a specific employment practice. "It is not enough to simply allege … a disparate impact on workers or point to a generalized policy … The employee is responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities." *Smith v. City of Jackson*, 544 U.S. 228, 241 (2004). Thus, Plaintiff's statistics do not comply with *Smith* to show a disparate impact violation, and cannot be recast plausibly to allege intentional discrimination with its higher pleading burden. Plaintiff also alleges no facts demonstrating a causal link between the purportedly subjective process and any resulting disparate impact. *Id. Starks v. Metropolitan Transp. Auth.*, 2022 WL 814668, at \*6 (S.D.N.Y. Mar. 17, 2022).

### B. Plaintiff Failed To Plead Any Basis For *Monell* Liability Against the County

The County cannot be liable under 42 U.S.C. § 1983 unless the alleged violation was caused by a County "policy or custom." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). To satisfy this pleading requirement, Plaintiff must allege *facts* showing the existence of (1) a formal policy, (2) actions taken by government officials responsible for establishing policies that caused that particular deprivation, (3) a practice so persistent and widespread that it constitutes a "custom or usage," or (4) a failure to properly train or supervise municipal employees to such an extent that it amounts to deliberate indifference to the rights of plaintiff. *Jackson v. Nassau Cnty.*, 552 F. Supp. 3d 350 (E.D.N.Y. 2021). The Complaint contains no such allegations.

Plaintiff does not allege his injury was caused by a formal policy officially endorsed by the County.[5] And Plaintiff's conclusory allegation that "the [CSC], 'as a final decision maker,' rendered" the disqualifying decision (Complaint, ¶ 145(b)), is insufficient to establish the CSC has final policymaking authority. In addition, no allegation plausibly establishes the existence of a "persistent and widespread" practice. Despite alleging that more than 1,000 non-white applicants were disqualified during the 2012 and 2018 post-exam process (Complaint, ¶¶ 98-101, 135), Plaintiff has identified no specific instance of discrimination, other than his own alleged experience. *See, e.g.*, *Sauer v. Town of Cornwall*, 2022 WL 4659687, at \*5 (S.D.N.Y. Sept. 30, 2022) ("Merely identifying a single instance of alleged misconduct is insufficient to establish a custom or policy by a municipality"). Finally, other than Plaintiff's conclusory allegations (Complaint, ¶ 145(c)), the Complaint lacks well pleaded statements of fact showing how Defendants purportedly failed to train employees, or how that alleged failure amounted to "deliberate indifference" to the rights of Plaintiff. *White v. City of New York*, 206 F. Supp. 3d 920 (S.D.N.Y 2016).[6]

## IV. Counts II and III of the Complaint Should Be Dismissed

With no viable federal claim, the Court should decline to exercise supplemental jurisdiction over Plaintiff's NYSHRL claims. In further briefing, if requested, we would show those claims should be dismissed in any event.

---

[5] On the contrary, the County maintains a comprehensive anti-discrimination policy. *See* Nassau County Equal Employment Opportunity and Sexual Harassment Prevention Policy, Standards and Procedures to be Utilized by Nassau County and its Agencies, EEO_Policy (nassaucountyny.gov) (October 2018).

[6] Plaintiff does not allege Commissioner Ryder is a policymaker or has supervisory authority over – or input into – CSC.

Thank you for your consideration of these requests.

Respectfully submitted,

s/ *Mark J. Lesko*

Mark J. Lesko

cc:  All Counsel of Record (By ECF)

*ACTIVE 686542766v6*