October 6, 2023

**Via ECF**
Honorable Lee G. Dunst
United States Magistrate Judge
Eastern District of New York
100 Federal Plaza, Courtroom 830
Central Islip, New York 11722

Re: *Myers v. County of Nassau et al.*, 22-cv-07023-OEM-LGD

Dear Magistrate Judge Dunst:

Pursuant to your Honor's Individual Practice Rule IV.D, the parties jointly submit this letter motion ("Letter Motion") regarding Defendants' request to stay discovery pursuant to Rule 26(c) of the Federal Rules of Civil Procedure ("FRCP"), until such time as Judge Merchant issues an order on Defendants' Motion to Dismiss the Class Action Complaint ("Motion to Dismiss").

## **Defendants' Position**

On August 9th and 23rd, the parties met and conferred about discovery generally. During those discussions, Defendants asked Plaintiff to agree to stay discovery until a decision is issued on their as-yet unfiled Motion to Dismiss, to which Plaintiff did not consent. At the August 31st initial conference, your Honor set a schedule for automatic disclosures to be exchanged by September 29 and for preliminary discovery to be completed by November 28. Your Honor indicated that if the parties were unable to resolve amicably the issue of whether there should be a stay of discovery, the parties should submit a joint letter not to exceed ten pages. DE 23. In an effort to avoid motion practice the parties again met and conferred on September 6 and on September 29. Although the parties' discussions concerning the limited set of materials that Defendants have offered to produce as part of preliminary discovery remain ongoing, the parties are at an impasse about the propriety of Defendants' request to stay discovery.

I. **Factual and Procedural Background**

In the Complaint (DE 1), Plaintiff asserts putative class action claims against Defendants for alleged racial discrimination in the hiring of police officers in Nassau County, in violation of the Equal Protection Clause of the Fourteenth Amendment and the New York State Human Rights Law ("NYSHRL"). On April 10, 2023, Defendants filed a pre-motion letter seeking a conference ("April Letter") regarding their anticipated Motion to Dismiss (DE 15, 21).[1] On August 4, 2023, the Court granted Defendants' requests and scheduled a pre-motion conference for September 12,

---

[1] On July 11, 2023, this matter was reassigned to the Honorable Orelia E. Merchant. And so, Defendants renewed their request as set forth in the April Letter (DE 21).

2023. All counsel appeared at the pre-motion conference and Judge Merchant set a briefing schedule.[2]

## II. Defendants' Request for a Stay of Discovery Should be Granted.

### A. There is Good Cause to Stay Discovery.

"Under Fed. R. Civ. P. 26(c), a district court may stay discovery during the pendency of a motion to dismiss for 'good cause' shown." *Hollins v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 78 (E.D.N.Y. 2006) (citations omitted). "Courts consider the following factors in determining whether a stay is appropriate: 1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; 2) the breadth of discovery and the burden of responding to it; and 3) the risk of unfair prejudice to the party opposing the stay." *Hollins*, 469 F.Supp.2d at 78; *Long Island Hous. Servs., Inc. v. Nassau Cnty. Indus. Dev. Agency*, 2015 WL 7756122, at *2 (E.D.N.Y. Dec. 1, 2015) (citations omitted). "Courts also may take into consideration the nature and complexity of the action, whether some or all of the defendants have joined in the request for a stay, and the posture or stage of the litigation." *Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, 236 F.R.D. 113, 115 (E.D.N.Y. 2006).

Applying these factors, good cause exists for a stay of discovery. Defendants' Motion to Dismiss is dispositive in nature. Moreover, discovery in this putative class action case will be burdensome, and no prejudice will inure to Plaintiff by waiting for a decision on the Motion to Dismiss.

### B. There is a Strong Showing Plaintiff's Claims Lack Merit.

The April Letter makes clear there is a strong likelihood that at least some, if not all, of the Defendants will be dismissed. For example, case law demonstrates that the NCPD and the CSC are "administrative arms" of the County that lack legal identities separate and apart from the County. *Rose v. County of Nassau,* 904 F.Supp.2d 244, 247 (E.D.N.Y. 2012). And so, neither defendant can be sued. *Id.* Given the probability that one or both of these defendants may be dismissed from the lawsuit, discovery while Defendants' Motion to Dismiss is pending would be unduly burdensome insofar as the discovery sought is potentially unnecessary and collecting same will require significant municipal resources and effort.

Similarly, Plaintiff's causes of action are likely to be dismissed. Indeed, Plaintiff's claims lack merit because, *inter alia*: 1) Plaintiff lacks standing to challenge the entirety of the 2012 and 2018 exam cycles when he was injured, if at all, as a result of only the 2018 background investigation; 2) Plaintiff fails to plausibly allege discriminatory intent because he does not allege any facts showing that the CSC was aware of his race or that the allegedly subjective hiring process was applied intentionally in a discriminatory manner; 3) Plaintiff's reliance on statistics and other circumstantial evidence does not meet Constitutional standards; 4) Plaintiff's disparate impact claim under the NYSHRL fails because he does not allege a specific employment practice or facts demonstrating a causal link between the purported process and any resulting disparate impact; and

---

[2] Defendants' Motion to Dismiss, not to exceed 35 pages in length, is to be served on or before October 12, 2023; Plaintiffs' Opposition Brief, not to exceed 35 pages in length, is to be served on or before November 13, 2023; and Defendants' Reply Brief, along with the Motion to Dismiss and Opposition Brief is to be filed on ECF pursuant to the Bundling Rule, on or before November 27, 2023.

5) Plaintiff fails to plausibly allege his purported injury was caused by a municipal policy or custom, as required by *Monell v. Dep't of Soc. Services.*, 436 U.S. 658, 691 (1978).

And so, if the Motion to Dismiss is even partially successful, the efforts and funds Defendants will need to pour into discovery will be largely for naught. For this reason alone, a stay is warranted.

### C. The Breadth of Expected Discovery Would Be Unduly Burdensome.[3]

The initial set of document requests ("Demands") served on Defendants August 16th (*see* Ex 1) illustrate the extraordinary breadth of discovery sought by Plaintiff. For example, the Demands call for the production of documents from 2011 to the present – even though Plaintiff was an applicant in 2018 (*see id.*, Instructions, at 12).[4] And if the expansive temporal scope was itself not sufficiently burdensome, when coupled with the broad categories of irrelevant information sought, the burden becomes acute. Consider, for example, Request No. 8 and its various subparts, which seek the production of documents and "related data" concerning all "NCPD applicants from 2011 to the present." This Request seeks information related to approximately 54,000 individuals who submitted employment applications, inclusive of highly confidential personal information, to the NCPD spanning over a decade. Retrieving those records will be a laborious and manual process that will take months to amass, will require municipal employees to abdicate other responsibilities and, as a result, will involve a significant amount of time and taxpayer expense. Once collected, those documents will then have to be scanned and closely reviewed for redaction.[5] This exercise, too, will be at significant effort and expense. The Court is respectfully directed to the accompanying Declaration of Personnel Specialist IV, Ralph Misiti, for detail regarding the

---

[3] In addition to the breadth of the discovery sought, one cannot ignore that many requests seek documents with no apparent relevance to the instant case. Consider, for example, Request No. 24, which calls for documents concerning the 2013 arrest of a former NCPD officer who was represented by Plaintiff's counsel and settled her case with the County in 2022.

[4] Nor can it be ignored that certain Demands call for the production of documents from 1982 through the present (*see* Ex 1 at Request Nos. 2-6). A demand for documents and communications spanning four decades, much of which exists in hard copy form only, is extraordinarily burdensome and not proportional to the needs of this case. *See, e.g., Rodriguez v. City of New York*, 2022 U.S. Dist. LEXIS 45787, at *4 (*E.D.N.Y. Mar. 15, 2022) (where discovery sought was from approximately thirty years and, like here, is not computerized, Court concluded information sought was not proportional given "the burdensome nature of having to locate and search through hard-copy files from decades ago"); *Pegoraro v. Marrero*, 281 F.R.D 122, 132 (S.D.N.Y. 2012) (finding discovery "overbroad with respect to time and the plaintiff failed to explain why her request…sought documents 'in the last 5 years' given that the relevant time period of the alleged wrongdoing").

[5] Defendants cannot disclose a non-party applicant's personal identifying information ("PII") without redaction. Indeed, designating same "confidential" is not sufficient to protect the privacy and security interests of a non-party. Similarly, any medical information contained within the records, including especially psychological records, will require the non-party applicant to provide a HIPAA release. Securing those releases, if even possible, will require additional time and likely result in additional expense.

anticipated burden associated with the requested discovery ("Misiti Declaration") (Exhibit A); *see also* Defendants' Responses and Objections to Plaintiff's First Set of Document Requests (Exhibit B).

Where, as here, a ruling on the Motion to Dismiss could greatly limit the facts at issue or dismiss the Complaint entirely, thus making the discovery moot, such laborious preparation weighs in favor of a stay. *See Separ v. Cnty. of Nassau*, 2021 WL 2474263, at *4 (E.D.N.Y. June 17, 2021) (staying discovery pending resolution of a motion to dismiss where Defendants had made a showing that their motion may be meritorious and the "breadth of discovery has the potential to be wide-ranging."); *see also Nat'l Rifle Ass'n of Am. v. Cuomo*, 2020 WL 7338588, at *5 (N.D.N.Y. Dec. 14, 2020) (issuing a stay where there was a "vast amount of discovery requested and pending and the fact that the additional efforts and funds that will need to be poured into additional discovery will be largely for naught if the pending motions to dismiss are granted.").

Moreover, as our April Letter makes plain, Defendants will move the Court pursuant to FRCP 23 to strike or preclude Plaintiff's class allegations. For this reason, too, discovery should be stayed. Indeed, if Defendants prevail, the need to conduct extensive and burdensome class discovery would be eliminated. And so, minimally, any discovery related to the hiring process involving hundreds, if not thousands of applicants should be adjourned until Judge Merchant rules on the Motion to Dismiss.

Finally, the posture of the litigation favors a stay as Defendants will be filing imminently their Motion to Dismiss. *See Chesney*, 236 F.R.D. at 116 (staying discovery pending the outcome of motion to dismiss where stay would reduce substantially "the economic burden of full party discovery"). Even if Defendants do not secure a complete dismissal of the Complaint, any party or cause of action dismissed would significantly narrow the scope of discovery. There is thus a high likelihood that a decision on the Motion to Dismiss will greatly limit the discovery required, if not eliminate the need for discovery altogether. On the other hand, the burden on Defendants to engage in discovery involving multiple municipal parties spanning more than a decade of time, involving innumerable and yet-to-be identified plaintiffs, and replete with PII and sensitive medical information requiring heavy redaction, is certain to be high. Accordingly, a stay of discovery is warranted to conserve municipal and taxpayer resources.[6]

### D. Plaintiff Will Not Be Prejudiced by a Stay.

Plaintiff will not be prejudiced by a stay pending a decision on the Motion to Dismiss. Notably, Defendants do not seek an indefinite stay, but rather a stay for a limited time period until the Court resolves the Motion to Dismiss. *See Nat'l Rifle Ass'n of Am.,* 2020 WL 7338588, at *6 ("Should the District Judge deny the motions to dismiss and discovery moves forward, plaintiff's prejudice is minimal as the stay will very likely be brief."); *Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2016 WL 3906712, at *7 (S.D.N.Y. July 14, 2016). Defendants are also not

---

[6] Moreover, the request for decades worth of documents, little of which is computerized, coupled with a tenuous claim of relevance, the burdensome nature of having to locate and search through hard-copy files, and the redaction needs of those materials makes the information sought disproportional to the needs of the case given the burden attendant to the requested discovery. *See, e.g.,* Rule 26(b)(1). And so, in the event a stay is not granted, Defendants anticipate requesting that the Court allocate the associated costs of this expansive and disproportional discovery onto Plaintiff pursuant to Rule 26(c)(1)(B) to protect Defendants from undue burden and expense.

requesting a stay of discovery pending a motion that requires the submission of evidence. The Motion to Dismiss can be decided on the pleadings without additional discovery. *See Boelter v. Hearst Co mmc'ns, Inc.*, 2016 WL 361554, at *5 (S.D.N.Y. Jan. 28, 2016). Hence, any stay would only be in effect until the Court issues an order on the Motion to Dismiss.

This case is in its nascent stages and discovery has not yet commenced, further eliminating any potential prejudice to the Plaintiff pending the resolution of the Motion to Dismiss. Indeed, courts routinely grant stays under similar circumstances, based on concerns for cost and efficiency. The Court should do so here. *See e.g., In re Mednax Servs., Inc. Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2020 WL 12432704, at *3 (S.D. Fla. Oct. 9, 2021) (granting stay of discovery pending motion to dismiss on similar grounds in data breach context); *Forsher v. J.M. Smucker Co.*, 2016 WL 5678567, at *3 (E.D.N.Y. Sept. 30, 2016) (granting stay of discovery "pending the Court's ruling on defendant's motion to dismiss"); *Telesca v. Long Island Housing Partnership, Inc.*, 2006 WL 1120636, at *2-3 (E.D.N.Y. April 27, 2006) (granting motion to stay pending resolution of defendant's motion to dismiss because the case was complex and "[a]ll parties will necessarily incur substantial expenses if and/or when discovery is conducted, and the plaintiff has failed to demonstrate that a stay of discovery, for the purposes of avoiding such expenses during the pendency of the motions to dismiss, would be unfairly prejudicial"); *U.S. v. Cty. of Nassau*, 1888 F.R.D. 187, 188-89 (E.D.N.Y. 1999) (granting stay of discovery during pendency of motion to dismiss where "interests of fairness, economy, and efficiency … favor[ed] the issuance of a stay of discovery").

Finally, we note that there is little to no risk that evidence will be lost as a result of a stay pending a decision on the Motion to Dismiss, as litigation holds are in place. Thus, in the event Defendants' Motion to Dismiss is denied, the discovery will nevertheless be available.

### Plaintiff's Position

I. **There Is No Proper Basis for a Stay of Discovery.**

This case, which was filed on November 17, 2022 and has been pending for almost a year, seeks to remedy pervasive racial discrimination against non-white applicants in the hiring of police officers in Nassau County. (Compl., ECF No. 1 ¶¶ 1-2). The Complaint easily satisfies the applicable pleading standards through statistical evidence and other allegations of bias. There is no proper basis to stay the discovery sought by Plaintiff.

Three factors are considered when determining whether a stay is appropriate: (i) "whether the defendant has made a strong showing that plaintiff's claim is unmeritorious"; (ii) the breadth of discovery and the burden of responding to it; and (iii) the risk of unfair prejudice to the party opposing the stay. *Thomas* v. *New York City Dept. of Educ.*, No. 09-CV-5167, 2010 WL 3709923, at *3 (E.D.N.Y. Sept. 14, 2010) (citation omitted). The presumption is that a motion to dismiss should not halt the progress of discovery. As courts in this circuit have routinely held, "a motion to dismiss does not automatically stay discovery, except in cases covered by the Private Securities Litigation Reform Act," cautioning that an "overly lenient standard for granting motions to stay all discovery is likely to result in unnecessary discovery delay in many cases." *Bennett* v. *Cuomo*, No. 22-CV-7846 (VSB), 2023 WL 2021560, at *1 (S.D.N.Y. Feb. 15, 2023) (citing cases). Thus,

the party seeking a stay of discovery "bears the burden" of establishing each of these factors and "showing good cause." *Id.* (citing *Hertz Glob. Holdings, Inc.* v. *Nat. Union Fire Ins. Co. of Pittsburgh*, No. 19-CV-6957 (AJN), 2020 WL 6642188, at *1 (S.D.N.Y. Nov. 12, 2020). Defendants have not and cannot carry their burden here. Indeed, an examination of these factors clearly demonstrates that a discovery stay would be unjustified.

### A. Plaintiff's Claims Are Meritorious and Easily Satisfy the Applicable Pleading Standards.

In assessing whether a defendant has made a "strong showing" that a plaintiff's claims are unmeritorious, "courts have looked to whether the complaint is facially without merit or whether the plaintiff has been unable to cite relevant authority in response to a defendant's challenge." *See Bennett*, 2023 WL 2021560, at *2 (citing cases). Where courts have found that both the defendant and the plaintiff can make strong arguments in their motion to dismiss briefing, motions to stay discovery are denied. *See, e.g.*, *Guiffre* v. *Maxwell*, No. 15-CV-7433 (RWS), 2016 WL 254932, at *2 (S.D.N.Y. Jan. 19, 2016) (denying motion to stay where plaintiff "had pled concrete facts and law to support all of her arguments," explaining that "[w]ith strong arguments on both sides, Defendant's argument does not rise to a level of the requisite 'strong showing' that Plaintiff's claim is unmeritorious"); *RBG Mgmt. Corp.* v. *Vill. Super Mkt., Inc.*, No. 22-CV-07996 (JLR), 2023 WL 1996920, at *3 (S.D.N.Y. Jan. 24, 2023) (same); *Bennett*, 2023 WL 2021560, at *2 (same). Defendants here have made no showing, let alone a "strong showing, " to meet their burden of showing that the claims are "unmeritorious."

*First*, Defendants cannot demonstrate that the claims in the Complaint are likely to be dismissed. To state a disparate treatment claim (as asserted in Counts I and II), a plaintiff need only allege facts that give "plausible support to a minimal inference of discriminatory motivation." *Brown* v. *City of New York*, No. 16-cv-1106 (NG) (RER), 2017 WL 1102677, at *3 (E.D.N.Y. 2017); *see Littlejohn* v. *City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). As Judge Gershon observed in the *Brown* case, statistics alone can be sufficient to demonstrate discriminatory intent on a motion to dismiss. *Brown*, 2017 WL 1102677, at *4-6 (denying motion to dismiss, stating that "statistics alone may be sufficient" to demonstrate "discriminatory intent on a motion to dismiss" (citations omitted)). Similarly, a plaintiff can demonstrate a disparate impact (as asserted in Count III) "by showing a gross statistical disparity in outcomes, or a statistically significant adverse effect coupled with other evidence of discrimination." *Id.* at *6. Here, the statistical evidence set forth in the Complaint is powerful and easily satisfies the applicable pleading standards.[7]

As set forth in the Complaint, although Black individuals comprise approximately 13% of the Nassau County population, only approximately 4% of the Nassau County police force is Black. Compl. ¶ 88. In fact, Nassau County hired approximately 7% of white applicants to the NCPD, but less than 2% of Black applicants. *Id.* ¶ 7. Moreover, in the highly subjective post-examination phase of the hiring process, Nassau County hired white applicants at a rate of approximately three times more than Black applicants. *Id.* ¶ 9. *See Waisome* v. *Port Auth. of New York and New Jersey*, 948 F.2d 1370, 1376 (2d. Cir. 1991) ("A finding of two or three standard deviations . . . is

---

[7] Defendants' argument that plaintiff "does not allege any facts showing that CSC was aware of his race" is unsupportable because, among other things, the Complaint alleges that Officer Myers met with an NCPD investigator in March 2020 as part of his background check, Compl. ¶ 41, and that Defendants track the races of applicants, *id.* ¶¶ 94–110.

generally highly probative of discriminatory intent."). This statistical evidence establishes an inference of intentional discrimination as a matter of law. *Burgis* v. *New York City Dep't of Sanitation*, 798 F.3d 63, 69 (2d Cir. 2015) (statistics alone sufficient to warrant a plausible inference of discrimination). In addition, the post-examination success rate for white applicants was approximately 24.2% and 8.5% for Black applicants. Compl. ¶ 100. And in the extremely subjective background check phase of the application process, the failure rate for white applicants was 19.5%, while the failure rate for Black applicants was a staggering 51.2%. *Id.* ¶ 102. The Complaint also alleges specific facts concerning the different treatment of white applicants, demonstrating that the subjective hiring process was applied in an intentionally discriminatory manner. *Id.* ¶¶ 57–66. Combined, these allegations far exceed the bar for raising a minimal inference of discrimination. *See, e.g.*, *Brown*, 2017 WL 1102677, at *5, *7 (allegations of bias-prone, subjective screening process established plausible basis for inference of discrimination together with statistics). Plaintiff has standing to assert all of the claims set forth in the Complaint challenging the pervasive racial discrimination in the hiring of Nassau County police officers because he suffered direct harm from those racially discriminatory practices, *see, e.g., Puglisi* v. *Underhill Park Taxpayer Ass'n*, 947 F. Supp. 673, 689 (S.D.N.Y. 1996) (standing to assert Section 1983 claim based on alleged racial discrimination by state actor); *Boyle* v. *City of Philadelphia*, No. 17-CV-262, 2018 WL 994218, at *3 (E.D. Pa. Feb. 20, 2018) (standing to assert Section 1983 claim based on subjective standards that "resulted in disparate treatment"), and the demographic data sought by Plaintiff is both directly relevant to proving those claims and properly discoverable.

Further, the Complaint easily satisfies the *Monell* pleading requirements by alleging that Plaintiff was subject to discrimination pursuant to a municipal policy or custom by alleging facts showing the existence of (1) a practice so persistent and widespread it constitutes a "custom" of discrimination, (2) an action taken by an official with decision-making authority, and (3) a failure by the municipality to train its employees tantamount to deliberate indifference to the rights of applicants. *Jackson* v. *Nassau Cnty.*, 552 F. Supp. 3d 350, 378 (E.D.N.Y. 2021).

Moreover, Defendants fail to demonstrate that, even if one of Plaintiff's claims were to be dismissed, there would be any impact whatsoever on the scope of discovery. Nor could they possibly do so given that evidence concerning Defendants' hiring policies and practices, and the application of those policies and practices to Plaintiff and the putative class, would be relevant to each of Plaintiff's claims.

*Second*, Defendants fail to explain why the dismissal of two of the parties—which Defendants characterize as "administrative arms" of Nassau County—would in any way affect discovery. Indeed, the dismissal of those parties would have virtually no impact on the scope of discovery in this case. The cases in which courts have stayed discovery where some parties might be dismissed involved situations where the dismissal of those parties could have a significant impact on the scope of discovery. *See, e.g., Global, Inc.* v. *Barclays*, No. 19-CV-04749 (VEC)(SDA), 2020 WL 832341, at *1 (S.D.N.Y. Feb. 20, 2020) (granting stay of discovery in part given "the large number of Defendants and the large number of claims asserted"); *O'Sullivan* v. *Deutsche Bank AG*, No. 17-CV-8798 (LTS)(GWG), 2018 WL 1989585, at *8 (S.D.N.Y. Apr. 16, 2018) (finding breadth of discovery involving seventeen defendants "a significant burden"). That is not the case here, as "administrative arms" of Nassau County would have to be engaged in obtaining and supplying information whether or not they are parties.

*Third*, Defendants' argument that a stay is warranted because they plan to challenge class allegations is unavailing. Defendants have not stated what allegations they intend to strike nor

made any showing whatsoever that they will be successful in doing so. The fact is that pattern or practice hiring discrimination class actions are regularly certified. *See* Memorandum and Order at 34, *United States* v. *City of New York*, No. 07-CV-2067 (NGG)(RLM) (E.D.N.Y. May 11, 2009), ECF No. 281 (certifying class of black FDNY applicants who alleged departments maintained a racially discriminatory entrance exam); *see also Eagle* v. *Vee Pak, Inc.* 343 F.R.D. 552, 581 (N.D. Ill. 2023) (certifying class of African American job applicants who alleged employer maintained a racially discriminatory hiring policy); *Lanning* v. *S.E. Pa. Transp. Auth.*, 176 F.R.D. 132, (E.D.P.A. 1997) (certifying class of unsuccessful female applicants for position of transit police officer who alleged transit authority's physical fitness test discriminated against female applicants).

Accordingly, given that Defendants have not—and cannot—make a strong showing that the claims are unmeritorious, the Court should deny Defendants' motion to stay discovery. *See Guiffre*, 2016 WL 254932, at *2.

> **B.    Defendants Have Failed to Demonstrate that the Scope of Discovery Would Be Overly Burdensome.**

As an initial matter, and importantly, this factor is less important where rulings on pending motions to dismiss are unlikely to alter the scope of discovery. *See Bennett*, 2023 WL 2021560, at *4 (stay is less appropriate when the resolution of pending motions to dismiss will not meaningfully change the scope or burden of discovery and a large amount of discovery arises out of the same core of facts). As discussed above, Defendants will not prevail on their motion to dismiss, and, even if they are successful in dismissing some parties or some claims, that would not alter the scope of discovery.

Moreover, discovery is already phased in a way that reduces any potential burdens. This Court has ordered that only preliminary discovery "necessary for reasoned consideration of settlement" must be completed by November 28, 2023. This well-reasoned approach need not be disturbed.

Defendants fail to acknowledge that Plaintiff specifically identified only the first ten of its document requests for the first phase of discovery. As Plaintiff made clear at the August 31 Initial Conference, Plaintiff considers only the first ten requests to be the "core" requests that need to be produced prior to November 28, 2023. These ten requests are specifically targeted to seek a discrete set of materials: (1) the application materials and application processing materials relating to Officer Myers; and (2) the demographic data that Nassau County has been required to compile and submit to the Department of Justice ("DOJ") in connection with the ongoing federal consent decree applicable to Defendants. (*See* Aug. 31, 2023 Hr'g Tr. at 7.) Plaintiff also has communicated a willingness to receive in the first instance only the demographic data submitted by Nassau County to DOJ since 2018. In response to those requests, Defendants have offered to produce: (1) non-privileged documents related to Plaintiff's application to the NCPD; and (2) the quarterly affirmative action reports submitted by Nassau County to DOJ for the years 2018 to the present. (Defs.' Responses and Objections to Pl.'s Request for the Production of Documents at 4–6.) Although Defendants offered to produce these materials "as soon as practicable after entry of a Protective Order," *id.*, and the Court entered a Protective Order and Agreement Regarding Discovery Plan on September 19, 2023, (ECF Nos. 27, 28), these materials have not yet been produced by Defendants. Once these items are produced, Plaintiff will assess what additional materials are necessary as part of Phase I discovery.

At this stage, Defendants' arguments concerning the potential for burden amount to nothing more than speculation.[8]  While Mr. Misiti raises logistical and technical limitations, the parties have not even begun their meet-and-confer process on any of Plaintiff's document requests beyond the first ten "core" requests that are the subject of preliminary discovery.  As Plaintiff has shown through measured preliminary discovery requests and in discussions with opposing counsel, Plaintiff is prepared to continue to work with Defendants to ensure that discovery is conducted efficiently.  Moreover, given that Defendants are represented by sophisticated counsel at Greenberg Traurig, which is experienced in litigating complex disputes that involve significant document and electronic discovery, Plaintiff is confident that Defendants will be able to leverage their counsel's considerable expertise and resources in streamlining and enabling the collection and production of relevant materials.  Accordingly, Defendants' claims of undue burden are not supportable.

### C.    Plaintiff Would Be Prejudiced by a Stay of Discovery.

This action was filed almost a year ago, in November 2022, and, in part as a result of multiple requests for extensions to respond to the Complaint from Defendants (*see, e.g.*, ECF Nos. 6, 7, 11), this case is only now moving forward.  Meanwhile, the hiring practices that Plaintiff is challenging are ongoing, impacting thousands of applicants to the NCPD.  Thus, Officer Myers and the putative class would be prejudiced by a stay of discovery.

### D.    There Exists No Good Cause to Stay Discovery in this Matter.

Defendants have failed to meet their significant burden to demonstrate that good cause exists to stay discovery pending resolution of their motion to dismiss.  Accordingly, Defendants' request for a stay should be denied, and discovery subject to the Court's continuing supervision should be permitted.

Respectfully submitted,

GREENBERG TRAURIG, LLP,
*Counsel for Defendants*

By: *Mark J. Lesko*
      Mark J. Lesko

---

[8] Plaintiff objects to Defendants' submission of a 16-page declaration from Mr. Ralph Misiti, which improperly includes arguments and rhetoric which should properly have been included in the five pages allocated to Defendants.  In any event, Plaintiff is not seeking production of individual applications and other items referenced in Mr. Misiti's declaration at this time.

                                            PAUL WEISS RIFKIND, WHARTON, & GARRISON, LLP,
*Counsel for Plaintiff*

By: *Lorin L. Reisner*
       Lorin L. Reisner