UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

JHISAIAH MYERS, on behalf of himself and all others   :
similarly situated,   :   Civil Action No.: 22-cv-7023
   :
          Plaintiff,   :
   :
        v.   :
   :
COUNTY OF NASSAU, NASSAU COUNTY CIVIL   :
SERVICE COMMISSION, and NASSAU COUNTY   :
POLICE DEPARTMENT   :
   :
         Defendants.   :

-------------------------------------------------------------------- x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT, STRIKE THE CLASS ACTION ALLEGATIONS AND DENY CLASS CERTIFICATION

GREENBERG TRAURIG, LLP
900 Stewart Avenue, 5th Floor
Garden City, NY 11530
(516) 629-9600

*Attorneys for Defendants*

*Of counsel:*

Kathryn C. Cole
Tiffany S. Fordyce *(pro hac vice)*
Mark J. Lesko
Jonathan L. Sulds
John R. DiCioccio
Paige D. Bartholomew

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ..................................................................................... 3

    A.    The NCPD Hiring Process ........................................................................ 3

    B.    Plaintiff's Disqualification from the NCPD .............................................. 5

LEGAL STANDARDS ......................................................................................... 6

    A.    Rule 12(b)(1) ........................................................................................... 6

    B.    Rule 12(b)(6) ........................................................................................... 7

    C.    Rule 23(c)(1)(A) ..................................................................................... 7

Point I      PLAINTIFF LACKS STANDING TO ASSERT THE CLAIMS IN THE COMPLAINT LEAVING THIS COURT WITHOUT JURISDICTION ................... 8

Point II    COUNT I OF THE COMPLAINT ALLEGING A VIOLATION OF THE EQUAL PROTECTION CLAUSE MUST BE DISMISSED BECAUSE PLAINTIFF FAILED TO PLAUSIBLY ALLEGE DEFENDANTS ACTED WITH THE REQUISITE DISCRIMINATORY INTENT ....................................... 10

    A.    Plaintiff Fails to Plausibly Allege Defendants Intentionally Discriminated Against Him ..................................................................... 11

    B.    Plaintiff Fails to Plausibly Allege He Was Treated Differently Than Any Similarly Situated Comparator ....................................................... 12

    C.    Plaintiff's "Statistical Evidence" Fails to Raise an Inference of Discriminatory Intent ............................................................................ 13

          (a)    Specific Employment Practice .................................................... 15

          (b)    Relevant Comparison ................................................................. 16

          (c)    Aggregated Statistics ................................................................. 18

          (d)    Cause and Disparity ................................................................... 19

Point III   COUNT I OF THE COMPLAINT MUST BE DISMISSED AS AGAINST THE COUNTY BECAUSE PLAINTIFF FAILS TO PLAUSIBLY ALLEGE ANY BASIS FOR *MONELL* LIABILITY ............................................... 20

A.     Plaintiff Fails to Plausibly Allege the Existence of a "Persistent and Widespread Practice" ........................................................................... 21

B.     Plaintiff Fails to Plausibly Allege the "Final Decisionmaker" Prong of *Monell* Liability ............................................................................... 23

C.     Plaintiff Fails to Plausibly Allege His Purported Injuries Were Caused by the County's Failure to Train / Supervise .......................................... 24

Point IV    COUNTS II AND III ALLEGING DISPARATE TREATMENT AND DISPARATE IMPACT UNDER THE NYSHRL SHOULD BE DISMISSED ........ 26

A.     The Court Should Dismiss Count II Alleging Disparate Treatment Under the NYSHRL.................................................................................... 26

B.     The Court Should Dismiss Count III Alleging Disparate Impact Under the NYSHRL.................................................................................... 27

Point V    THE COURT SHOULD DENY CLASS CERTIFICATION OR STRIKE PLAINTIFF'S CLASS ALLEGATIONS BECAUSE THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE AN ENTITLEMENT TO CLASS TREATMENT.................................................................................... 27

Point VI    THE COMPLAINT MUST BE DISMISSED AS AGAINST THE NCPD AND THE CSC.................................................................................... 32

CONCLUSION.................................................................................................... 33

ACTIVE 690810732v2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adickes v. S.H. Kress & Co.*,
  398 U.S. 144 (1970)............................................................................21

*Aguilera v. Cty. of Nassau*,
  425 F. Supp. 2d 320 (E.D.N.Y. 2006) ...........................................25

*In re Amato v. Cty. of Nassau, et al.*,
  Index No. 604214/2021 (Sup Ct, Nassau County, Jul. 6, 2021)..........................2, 27

*Amnesty America v. Town of W. Hartford*,
  361 F.3d 113 (2d Cir. 2004)..............................................................21

*Arciello v. Cty. of Nassau*,
  No. 16 Civ. 3974 (E.D.N.Y. Feb. 17, 2017) ...................................33

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................7, 18

*Baity v. Kralik*,
  51 F. Supp. 3d 414 (S.D.N.Y. 2014)................................................24

*Barrows v. Becerra*,
  24 F.4th 116 (2d Cir. 2022) .............................................................29

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................7, 15, 18

*Blum v. Yaretsky*,
  457 U.S. 991 (1982)............................................................................9

*Bodenmiller v. Cty. of Suffolk*,
  No. 20 Civ. 00414, 2023 WL 2214037 (E.D.N.Y. Feb. 15, 2023)..........................23

*Borgese v. Baby Brezza Enterprises LLC*,
  No. 20 Civ. 1180, 2021 WL 634722 (S.D.N.Y. Feb. 18, 2021) ..........................8, 28

*Brown v. City of N.Y.*,
  No. 16 Civ. 1106, 2017 WL 1102677 (E.D.N.Y. Mar. 3, 2017) ...........................16

*Buari v. City of N.Y.*,
  530 F. Supp. 3d 356 (S.D.N.Y. 2021)........................................20, 21

i

*Burgis v. New York City Dept. of Sanitation*,
    798 F.3d 63 (2d Cir. 2015)..................................................................10, 13, 14

*Camacho v. City of N.Y.*,
    No. 19 Civ. 11096, 2020 WL 4014902 (S.D.N.Y. July 16, 2020) ..........................................28

*Carter v. HealthPort Technologies, LLC*,
    822 F.3d 47 (2d Cir. 2016)..................................................................6

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)..................................................................7

*Chen-Oster v. Goldman, Sachs & Co.*,
    877 F. Supp. 2d 113 (S.D.N.Y. 2012)..................................................................31

*Chin v. Port Auth. of N.Y. & N.J.*,
    685 F.3d 135 (2d Cir. 2012)..................................................................27

*Chodkowski v. Cty. of Nassau*,
    No. CV 16-5770, 2017 WL 10637956 (E.D.N.Y. Nov. 30, 2017)..........................................32

*City of Canton v. Harris*,
    489 U.S. 378 (1989)..................................................................20

*Connick v. Thompson*,
    563 U.S. 51 (2011)..................................................................25

*Dais v. Cty. of Nassau, et al.*,
    Index No. 609760/2018 (Sup Ct, Nassau County, Dec. 4, 2018) ........................................2, 27

*Davis v. Conn. Dep't Corr.*,
    169 F. Supp. 3d 311 (D. Conn. 2016)..................................................................9, 10

*Dunnigan v. Metro. Life Ins. Co.*,
    214 F.R.D. 125 (S.D.N.Y. 2003) ..................................................................31, 32

*Fedotov v. Peter T. Roach & Assocs., P.C.*,
    354 F. Supp. 2d 471 (S.D.N.Y. 2005)..................................................................8

*Felix v. City of N.Y.*,
    344 F. Supp. 3d 644 (S.D.N.Y. 2018)..................................................................22

*Garcia v. Execu|Search Grp., LLC*,
    No. 17 Civ. 9401, 2019 WL 689084 (S.D.N.Y. Feb. 19, 2019) ............................................8

*Gen. Bldg. Contractors Ass'n v. Pennsylvania*,
    458 U.S. 375 (1982)..................................................................10

ACTIVE 690810732v2

*Goldberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
No. 97 Civ. 8779, 1998 WL 321446 (S.D.N.Y. June 18, 1998), *aff'd sub nom,*
*Goldberg v. Merrill Lynch*, 181 F.3d 82 (2d Cir. 1999) ............................................32

*Gomez v. City of N.Y.*,
No. 16-Civ, 1274, 2017 WL 1034690, at *11 (E.D.N.Y. Mar. 16, 2017) ........................22, 23

*Green v. Dep't of Educ. of City of N.Y.*,
16 F.4th 1070 (2d Cir. 2021) ...................................................................................20

*Gurrieri v. Cty. of Nassau*,
No. 2:16-Civ. 6983, 2017 WL 3432208 (E.D.N.Y. Aug. 9, 2017) ...................................33

*Guston v. Ruiz*,
No. 17 Civ. 1252, 2018 WL 3336448 (E.D.N.Y. Jul. 6, 2018) .......................................21

*Hayden v. Cty. of Nassau*,
180 F.3d 42 (2d Cir. 1999)........................................................................................11

*Hernandez v. Off. of the Comm'r of Baseball*,
No. 22-343 2023 WL 5217876 (2d Cir. Aug 15, 2023) ............................................12, 15

*Hill v. City of N.Y.*,
No. 13 Civ. 6147, 2019 WL 1900503 (E.D.N.Y. Apr. 29, 2019)....................................29

*Hurdle v. Bd. of Educ. of City of N.Y.*,
113 F. App'x 423 (2d Cir. 2004) ...............................................................................23

*Hyland v. Navient Corp.*,
48 F.4th 110 (2d Cir. 2022) .......................................................................................9

*Isaac v. City of N.Y.*,
No. 16 Civ. 4729 2018 WL 5020173 (E.D.N.Y. Aug. 6, 2018)......................................22

*Kassman v. KPMG, LLP*,
416 F. Supp. 3d 252 (S.D.N.Y. 2018).....................................................................18, 19

*Ki v. City of N.Y.*,
No. 20 Civ. 04343, 2022 WL 5423642 (E.D.N.Y. Sept. 1, 2022)...................................21

*Kirkland-Hudson v. Mount Vernon City Sch. Dist.*,
No. 21 Civ. 695, 2023 WL 2691622 (S.D.N.Y. Mar. 29, 2023) .....................................13

*Laurant v. City of N.Y.*,
No. 1 Civ. 5740, 2019 WL 1364230 (S.D.N.Y. Mar. 26, 2019) .................................11, 13

*Leonard F. v. Israel Disc. Bank of N.Y.*,
199 F.3d 99 (2d Cir. 1999)..........................................................................................7

ACTIVE 690810732v2

*Lewis v. Casey,*
    518 U.S. 343 (1996) ................................................................................................. 9

*Li v. City of N.Y.,*
    246 F. Supp. 3d 578 (E.D.N.Y. 2017) ................................................................. 20

*Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of N.Y.,*
    No. 18-CV-4476 (LJL), 2022 WL 17175798 (S.D.N.Y. Nov. 22, 2022) ............. 15, 16, 19, 30

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ............................................................................................. 6, 9

*Lynch v. City of N.Y.,*
    952 F.3d 67 (2d Cir. 2020) .................................................................................... 2

*Mandala v. NTT Data, Inc.,*
    975 F.3d 202 (2d Cir. 2020), *reh'g denied*, 988 F.3d 664 (2d Cir. 2021) ...................... *passim*

*Martinez v. City of Stamford,*
    No. 22-702-cv, 2023 WL 3162131 (2d Cir. May 1, 2023) ................................... 13

*McJunkin v. Suffolk Cty. Civ. Serv.,*
    No. 13 Civ. 5045, 2014 WL 3490720 (E.D.N.Y. Jul. 10, 2014) .......................... 33

*McLaurin v. New Rochelle Police Officers,*
    373 F. Supp. 2d 385 (S.D.N.Y. 2005) ................................................................. 25

*McLennon v. City of N.Y.,*
    171 F. Supp. 3d 69 (E.D.N.Y. 2016) ................................................................... 21

*Monell v. Dep't Soc. Servs. of the City of N.Y.,*
    436 U.S. 658 (1978) ........................................................................................ *passim*

*Murphy v. Potter,*
    No. 06 Civ. 1989, 2008 WL 2433615 (E.D.N.Y. Jun. 12, 2008) ......................... 30

*N.Y. State Off. of Mental Health, Manhattan Psychiatric Ctr. v. N.Y. State Div. of Human Rights,*
    223 A.D.2d 88 (3d Dept 1996) ............................................................................ 16

*Neighbour v. Covert,*
    68 F.3d 1508 (2d Cir. 1995) ................................................................................ 25

*Nicosia v. Amazon.com, Inc.,*
    834 F.3d 220 (2d Cir. 2016) .................................................................................. 2

*Pembaur v. City of Cincinnati,*
    475 U.S. 469 (1986) ............................................................................................. 23

iv

*Perez v. Ponte*,
    236 F. Supp. 3d 590 (E.D.N.Y. 2017) ..................................................................32

*Pers. Adm'r of Mass. v. Feeney*,
    442 U.S. 256 (1979)..........................................................................................11

*PFT of Am., Inc. v. Tradewell, Inc.*,
    No. 98 Civ. 6413, 1999 WL 179358 (S.D.N.Y. Mar. 31, 1999) ..........................32

*In re PPDAI Grp. Inc. Sec. Litig.*,
    No. 18 Civ. 6716, 2022 WL 198491 (E.D.N.Y. Jan. 21, 2022)............................29

*Raines v. Byrd*,
    521 U.S. 811 (1997)............................................................................................6

*Raymond v. City of N.Y.*,
    317 F. Supp. 3d 746 (S.D.N.Y. 2018).................................................................14

*Regents of the Univ. of California v. Bakke*,
    438 U.S. 265 (1978)..........................................................................................18

*Reynolds v. Barrett*,
    685 F.3d 193 (2d Cir. 2012)..............................................................................13

*Ricci v. Destafano*,
    557 U.S. 557 (2009)..........................................................................................18

*Roe v. City of Waterbury*,
    542 F.3d 31 (2d Cir. 2008).................................................................................23

*Rose v. Cty. of Nassau*,
    904 F. Supp. 2d 244 (E.D.N.Y. 2012) ...............................................................33

*Ruiz v. Cty. of Rockland*,
    609 F.3d 486 (2d Cir. 2010)..........................................................................13, 27

*Russell v. Forster & Garbus, LLP*,
    No. 17 Civ. 4274, 2020 WL 1244804 (E.D.N.Y. Mar. 16, 2020) ......................7, 28

*Sauer v. Town of Cornwall*,
    No. 7:20 Civ. 04881, 2022 WL 4659687 (S.D.N.Y. Sept. 30, 2022)....................21

*Simms v. City of N.Y.*,
    No. 10 Civ. 3420, 2011 WL 4543051 (E.D.N.Y. Sept. 25, 2011) ........................25

*Smith v. City of Jackson*,
    544 U.S. 228 (2005)......................................................................................15, 16

v

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ...................................................................6, 9, 10

*St. Louis v. Praprotnik*,
  485 U.S. 112 (1988) ...................................................................................21

*Starks v. Metro Transp. Auth.*,
  No. 1:20-cv-09569, 2022 WL 814668 (S.D.N.Y. Mar. 17, 2022) ...................14, 26

*Students For Fair Admissions, Inc. v. President and Fellows of Harvard Coll.*,
  143 S. Ct. 2141(2023) ................................................................................18

*Sutter v. Dibello*,
  No. 18 Civ. 817, 2021 WL 930459 (E.D.N.Y. Mar. 10, 2021) .............................13

*Syeed v. Bloomberg*,
  568 F Supp 3d 314 (S.D.N.Y. 2021) ................................................................19, 27

*Talarico v. Port Auth. of N.Y. & N.J.*,
  367 F. Supp. 3d 161 (S.D.N.Y. 2019) ..............................................................7, 28

*Teamsters Local 445 Freight Div. Pens. Fund v. Bombardier Inc.*,
  546 F.3d 196 (2d Cir. 2008) ..........................................................................28

*Tex. Dep't. of Hous. Cmty. Affs. v. Inclusive Cmtys. Proj., Inc.*,
  576 U.S. 519 (2015) ....................................................................................12

*Tieman v. City of Newburgh*,
  No. 13 Civ. 4178, 2015 WL 1379652 (S.D.N.Y. Mar. 26, 2015) ............................21, 24, 25

*Touissant v. City of N.Y.*,
  2021 WL 4429316 (S.D.N.Y. Sept. 27, 2021) .....................................................16, 27

*Traino v. Town of Harrison, NY*,
  895 F. Supp. 2d 526 (S.D.N.Y. 2012) ..............................................................22

*Treadwell v. Cty. of Putnam*,
  No. 14 Civ. 10137, 2016 WL 1268279 (S.D.N.Y. Mar. 30, 2016) ..........................25

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*,
  549 F.3d 100 (2d Cir. 2008) ...........................................................................6

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ........................................................................... *passim*

*White v. City of N.Y.*,
  206 F. Supp. 3d 920 (S.D.N.Y. 2016) ..............................................................21

ACTIVE 690810732v2

*Woods v. Empire Health Choice, Inc.*,
    574 F.3d 92 (2d Cir. 2009)..................................................................6

*Wray v. City of N.Y.*,
    490 F.3d 189 (2d Cir. 2007)..............................................................20

**Statutes**

4 NYCRR 3.2(b) ....................................................................................6

22 NYCRR 25.13(d)(1)(ix)......................................................................6

28 U.S.C. § 1367(c) ..............................................................................26

Federal Rules of Civil Procedure Rules 12(b)(1) and (b)(6) .................1, 6, 7

Federal Rules of Civil Procedure Rule 23 ........................................ *passim*

New York State Human Rights Law .........................................1, 3, 26, 27

**Other Authorities**

Executive Order 203 ..............................................................................26

NEWSDAY (May 27, 2021)
    https://projects.newsday.com/long-island/police-hiring/ ......................1, 5

Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84
    N.Y.U. L. REV. 97, 132 (2009) ...........................................................29

U.S. CONST., Art. III, § 2 .........................................................................6

ACTIVE 690810732v2

Defendants the County of Nassau ("County"), Nassau County Civil Service Commission ("CSC"), and Nassau County Police Department ("NCPD") (collectively, "Defendants"), submit this Memorandum of Law in support of their motion ("Motion") for an Order: (i) pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure ("Rules"), dismissing the class action complaint ("Complaint") of Plaintiff Jhisaiah Myers ("Plaintiff"); or, in the alternative, (ii) striking the class action allegations and denying class certification pursuant to Rule 23(c)(1)(A).

## PRELIMINARY STATEMENT

Plaintiff's putative class action alleges violations of the Equal Protection Clause of the Fourteenth Amendment and the New York State Human Rights Law ("NYSHRL") in connection with a multi-step, post-written examination hiring process employed by the CSC. Although Plaintiff alleges his disqualification by the CSC at the second stage of the 2018 post-written exam cycle—the background investigation—was based on his race, the *Newsday* article referenced throughout the Complaint confirms that a candidate's race is not disclosed to the CSC during the challenged process. What the CSC did learn is this: on July 12, 2011, Plaintiff received a traffic ticket for "Sidewings/Side Windows Non-Transparent." Less than a year later, on May 2, 2012, Plaintiff received seven tickets for various infractions including "Rear Side Windows Non-Transparent" and "tinted" "brake lights" and "covered" license plates. Then, on June 15, 2012, Plaintiff was again ticketed for "tints on windows and plate covers." And, during a traffic stop on August 6, 2012, Plaintiff received five tickets for infractions including "Cover Rear Plate," "Rear Side Windows Non-Transparent," "Sidewings/Side Windows Non-Transparent," and "Covered/Tinted Stop Lamps."[1] Compl., ¶ 42. And so, CSC learned Plaintiff received no less than 14 traffic tickets during a 13-month period, some for infractions he chose not to correct. *Id.*

---

[1] *See* Declaration of Mark J. Lesko, sworn to October 12, 2023 ("Lesko Decl."), at Exhibit A (Plaintiff's application file to become a Nassau County Police Officer). These documents are

Naturally, the County needs a process to determine on an individual basis whether a candidate for the NCPD presents issues that raise questions about one's suitability for hire. The process here worked exactly as it should have. After receiving multiple traffic tickets, Plaintiff exhibited a flagrant disregard for the law by failing for more than a year to cure the issues. Plaintiff chose to continue to break the law, resulting in his disqualification from the 2018 post-exam hiring process.[2] Against this backdrop, the Complaint should be dismissed.

First, Plaintiff did not participate in the 2012 NCPD hiring process, and so he lacks standing to challenge the 2012 exam or post-exam process. Neither was Plaintiff "injured" by the 2018 written or physical agility exams (each of which he passed), or the polygraph, psychological or medical portions of the process (none of which he participated in). His only possible "injury," if any, relates solely to the background investigation phase of the 2018 post-exam process. Thus, he lacks standing to challenge anything but the 2018 background investigation, a claim he does not assert.

Plaintiff asks the Court to make him a class representative for all non-white applicants disqualified at any phase of the 2012 and 2018 hiring processes. This case, however, is unsuitable

referred to, incorporated by reference in, and integral to the Complaint (Compl., ¶¶ 38-44) and are thus properly before the Court. *See, e.g., Lynch v. City of N.Y.*, 952 F.3d 67, 79 (2d Cir. 2020); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

[2] Such conduct, regardless of any protected characteristic of the applicant, is a disqualifying factor Defendants apply and which New York courts uphold. *See, e.g., In re Amato v. Cty. of Nassau, et al.*, Index No. 604214/2021, NYSCEF Doc. No. 23 (Sup. Ct., Nassau County, Jul. 6, 2021) (upholding determination that white applicant's past conduct of recklessness, as exhibited by driving record, could impact his fitness to uphold law and order) (Lesko Decl., Ex. C); *Dais v. Cty. of Nassau, et al.*, Index No. 609760/2018, NYSCEF Doc No. 20 (Sup. Ct., Nassau County, Dec. 4, 2018) (upholding disqualification of a white, Greek Orthodox applicant because driving record evidenced "a record of disrespect for the requirements and processes of the law") (Lesko Aff., Ex. D).

ACTIVE 690810732v2

for class treatment. The hiring process consists of multiple components, only one of which led to Plaintiff's disqualification. Plaintiff shares no commonality with applicants disqualified at any stage of the 2018 process other than the background investigation. Plaintiff also lacks commonality or typicality with those who participated in the 2012 process. And so, Plaintiff cannot represent a class of all applicants who took, but were not hired after, the 2012 and 2018 exams.

Next, Plaintiff does not properly plead the elements of a §1983 claim or disparate impact or disparate treatment claims under the NYSHRL. Plaintiff does not allege any facts demonstrating the CSC Commissioners who disqualified him were aware of his race. Because of this, Plaintiff cannot plausibly allege intentional discrimination. Plaintiff's speculative and conclusory allegations do not demonstrate his disqualification in the 2018 post-exam process was intentional discrimination. Nor do his "statistics," which violate *Mandala v. NTT Data, Inc.*, 975 F.3d 202 (2d Cir. 2020), *reh'g denied*, 988 F.3d 664 (2d Cir. 2021), by relying on general population statistics without any allegation why the general population equates to the qualified applicant pool. Simply put, Plaintiff improperly seeks a quota system based on race through an advisory opinion.

Nor can Plaintiff meet the requirements of *Monell v. Dep't Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978). Among other things, Plaintiff does not identify a specific policy that led to his alleged constitutional violation, nor does he identify a sufficient number of examples to establish a widespread practice. Moreover, Plaintiff does not (and cannot) allege that the CSC Commissioners who disqualified him knew his race or the race of any candidate. Absent such allegations, Plaintiff does allege a prima facie claim under *Monell*.

## STATEMENT OF FACTS

### A. The NCPD Hiring Process

Prospective NCPD officers undergo a competitive, multi-step hiring process beginning with an application followed by a written exam ("Exam") administered by the CSC. Compl., ¶ 92.

Candidates who achieve "a sufficiently high score" on the Exam are added to an eligibility list ("Eligibility List"). *Id.*

Applicants selected for further processing continue to the post-Exam process consisting of a physical agility test ("Physical Agility Test") (*id.* ¶ 92(b)); those who pass the Physical Agility Test proceed to a background investigation ("Background Investigation") (*id.* ¶ 92(e)); and those who pass the Background Investigation proceed to post-investigative steps that include a medical evaluation ("Medical Exam"), psychological evaluation ("Psychological Exam") and polygraph ("Polygraph"). *Id.* ¶ 92(h)-(j).

During the Background Investigation, applicants complete a questionnaire ("Questionnaire") providing information about their employment, criminal, motor vehicle, and financial history. *Id.* ¶ 92(e). After submitting the Questionnaire, a NCPD investigator ("Investigator") meets with the applicant, conducts an investigation of the applicant, and drafts a background report ("General Review Report") summarizing the applicant. *Id.* ¶ 92(f).

The General Review Report, submitted to the CSC, incudes only the candidate's: (i) name, date of birth, and contact information; (ii) Exam date and Exam score; (iii) use of illegal drugs or arrest record; (iv) traffic tickets or license suspensions; (v) automobile accidents and resulting litigation; (vi) education and residency requirements; (vii) delinquent debt; (viii) pistol permit, if any; (ix) prior and/or current military service; (x) present employer and any prior employer terminations; and (xi) positive warrants or fingerprint matches. *See* Lesko Decl., at Ex. A, pp. 17-18 (Plaintiff's General Review Report, contained in his application file). The General Review Report does not disclose an applicant's race or ethnicity.

The Complaint does not allege the CSC Commissioners who disqualified Plaintiff, or denied his appeals, knew Plaintiff's race. Nor could Plaintiff have plausibly alleged as much.

4

Indeed, as the *Newsday* article ("Article") cited throughout the Complaint states, the CSC Commissioners receive the General Review Reports that summarize investigative findings but do not disclose a candidates' race or ethnicity. *See* Lesko Decl., Ex. B, Jim Baumbach, *6,539 Black People Tried to Become Police Officers on LI. Only 67 Were Hired*, NEWSDAY (May 27, 2021), https://projects.newsday.com/long-island/police-hiring/ ("The [NCPD] provides [CSC] with a form that summarizes investigative findings *without disclosing a candidate's race or ethnicity*.") (emphasis added). Plaintiff was disqualified at the Background Investigation stage of the post-Exam process. Compl., ¶ 46.

Candidates who pass the Exam, Physical Agility Test, and Background Investigation proceed to the Psychological Exam, Medical Exam, and Polygraph, which is not detailed here given Plaintiff never reached these phases of the hiring process. If an applicant successfully passes each stage of the hiring process, s/he is added to the list of eligible hires and may be selected to enter the NCPD Academy. *Id.* ¶ 92(m).

**B. Plaintiff's Disqualification from the NCPD**

In January 2018, Plaintiff took the Exam, "achieved a sufficiently high score" and, unlike thousands of other applicants, was added to the Eligibility List. *Id*. ¶¶ 38-39. In May 2019, Plaintiff next took, and passed, the Physical Agility Test. *Id.* ¶ 40. Then, in March 2020, the NCPD Applicant Investigation Unit advised Plaintiff it would conduct a Background Investigation. *Id.* ¶ 41. An Investigator was assigned to meet with Plaintiff and conduct his Background Investigation. *Id.*

Plaintiff's Background Investigation revealed that Plaintiff received 14 traffic tickets from four stops in a 13-month period, all centered on the same infractions.

On August 6, 2020, Plaintiff was disqualified from the NCPD based on his "disrespect for the process of law and order as evidenced by [his] motor vehicle record." Compl., ¶ 46 (alteration

5

in original).[3] In September 2020, Plaintiff appealed the CSC's decision, which was upheld on October 29, 2020. *Id.* ¶¶ 52, 56. One year later, Plaintiff filed a second, untimely appeal with the CSC, which was denied. *Id.* ¶ 56. In neither appeal did Plaintiff, who was represented by counsel (*id.* ¶ 50), assert he was the victim of discrimination.

## LEGAL STANDARDS

### A. Rule 12(b)(1)

Federal court jurisdiction is limited to resolving "cases" and "controversies." U.S. CONST., Art. III, § 2; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). "In order to ensure that this 'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as 'the proper part[ies] to bring' suit." *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)) (alteration in original).

To establish standing "a plaintiff is constitutionally required to have suffered (1) a concrete, particularized, and actual or imminent injury-in-fact (2) that is traceable to defendant's conduct and (3) likely to be redressed by a favorable decision." *Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 96 (2d Cir. 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Plaintiff bears the burden of establishing these elements. *See Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 55 (2d Cir. 2016).

---

[3] Nassau's standard is broadly applied in New York when assessing an individual's qualification for public safety hiring. *See* 22 NYCRR 25.13(d)(1)(ix) (Chief Administrator of Courts may disqualify an applicant for Court Officer based on a record of disrespect for the requirements and processes of law, including repeated traffic offenses); *see also* 4 NYCRR 3.2(b).

ACTIVE 690810732v2

**B. Rule 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To satisfy the plausibility standard, plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth and are thus not sufficient to withstand a motion to dismiss. *Id.*

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted). But "[e]ven where a document is not incorporated by reference, the court may . . . consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal citation omitted).

**C. Rule 23(c)(1)(A)**

Rule 23(c)(1)(A) requires that courts "decide whether to certify a class action '[a]t an early practicable time' after a putative class action is brought." *Talarico v. Port Auth. of N.Y. & N.J.*, 367 F. Supp. 3d 161, 166 (S.D.N.Y. 2019) (quoting Rule 23(c)(1)(A)). The defendant "need not wait" for a plaintiff to move for class certification and may, as here, "move for an order denying class certification" before plaintiff files such motion. *Russell v. Forster & Garbus, LLP*, No. 17

Civ. 4274, 2020 WL 1244804, at *3 (E.D.N.Y. Mar. 16, 2020) (quoting *Fedotov v. Peter T. Roach & Assocs., P.C.*, 354 F. Supp. 2d 471, 478 (S.D.N.Y. 2005)).

"Whether to grant or deny a motion to strike lies within the court's sound discretion." *Garcia v. Execu\Search Grp., LLC*, No. 17 Civ. 9401, 2019 WL 689084, at *1 (S.D.N.Y. Feb. 19, 2019) (internal citations omitted). But where, as here, the "complaint itself demonstrates that the requirements for maintaining a class action cannot be met," the court may strike the class allegations at any practicable time after the suit has been filed and without further discovery. *See Borgese v. Baby Brezza Enterprises LLC*, No. 20 Civ. 1180, 2021 WL 634722, at *2 (S.D.N.Y. Feb. 18, 2021) (internal quotations and citation omitted). "The plaintiff will bear the burden of establishing the certification requirements of Rule 23." *Id.* (internal quotations and citation omitted).

The Complaint should be dismissed in its entirety. Alternatively, the Court should deny class certification and strike Plaintiff's class allegations.

## Point I

### PLAINTIFF LACKS STANDING TO ASSERT THE CLAIMS IN THE COMPLAINT LEAVING THIS COURT WITHOUT JURISDICTION

Plaintiff—on behalf of himself and a putative class of unnamed plaintiffs—seeks to challenge the constitutionality of the *entire* post-Exam hiring process irrespective of exam cycle. *See* Compl., ¶¶ 8, 22, 83, 92-93, 99, 132. But Plaintiff passed the Physical Agility Test (*id.* ¶ 40) associated with the 2018 Exam. And because Plaintiff was disqualified during the 2018 Background Investigation (*id.* ¶ 46), he never took the Polygraph, Psychological or Medical Exam. Because Plaintiff did not suffer any injury with respect to these portions of the 2018 post-Exam hiring process, he lacks standing to challenge them. And because Plaintiff did not participate in the 2012 Exam or post-Exam process, he lacks standing to challenge any aspect of the 2012 Exam.

ACTIVE 690810732v2

"[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo*, 578 U.S. at 338 (quoting *Lujan*, 504 U.S. at 560). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. "Class actions are no exception to this long-standing rule." *Hyland v. Navient Corp.*, 48 F.4th 110, 118 (2d Cir. 2022) (internal citation omitted); *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (internal quotations and citation omitted).[4] The United States Supreme Court has held:

> It is not enough that the conduct of which the plaintiff complains will injure *someone*. The complaining party must also show that he is within the class of persons who will be concretely affected. Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject

*Blum v. Yaretsky*, 457 U.S. 991, 999 (1982).

Plaintiff seeks to bring an action on behalf of hundreds of unnamed plaintiffs allegedly injured by any and every facet of the 2012 and 2018 hiring process. Compl., ¶¶ 132-33. But Plaintiff lacks standing to challenge any portion of the process other than the 2018 Background Investigation, since that was the only facet he participated in and did not pass. *See Davis v. Conn.*

---

[4] "[I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *Id.* (internal quotations and citation omitted) (alteration in original).

*Dep't Corr.*, 169 F. Supp. 3d 311, 316-18 (D. Conn. 2016) (in a multi-component hiring process, an individual lacks standing to challenge components in which they did not participate).

In *Davis,* the plaintiff brought a putative class action alleging disparate treatment and disparate impact based on an allegedly discriminatory physical test administered by the Department of Correction. *Id.* at 313. As in this case, the test in *Davis* involved multiple components, all of which had to be completed successfully before the candidate could move on to the next phase. *Id.* The plaintiff failed the sit-up test and was therefore precluded from proceeding. *Id.* at 314. Despite failing only one portion of the physical test, plaintiff sought to challenge the entire test as discriminatory. *Id.* at 314-15. Finding plaintiff's alleged injury was caused by only one component of the test, the court dismissed those claims related to portions of the test the plaintiff completed successfully or did not take. *Id.* at 318.

Plaintiff lacks standing to challenge any aspect of the 2012 process, as well as those aspects of the 2018 post-Exam process that he passed or in which he did not participate. Because each claim in the Complaint is predicated upon the *entire* post-Exam process irrespective of exam cycle—rather than only the Background Investigation portion of the 2018 post-Exam process— under *Spokeo* and *Davis*, this Court lacks subject matter jurisdiction and the Complaint should be dismissed.

### Point II

### COUNT I OF THE COMPLAINT ALLEGING A VIOLATION OF THE EQUAL PROTECTION CLAUSE MUST BE DISMISSED BECAUSE PLAINTIFF FAILED TO PLAUSIBLY ALLEGE DEFENDANTS ACTED WITH THE REQUISITE DISCRIMINATORY INTENT

To state a discrimination claim under § 1983 Plaintiff must sufficiently allege Defendants acted with discriminatory intent. *Burgis v. New York City Dept. of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015) (citing *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982)).

Discriminatory intent or purpose "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979); *Hayden v. Cty. of Nassau*, 180 F.3d 42, 50 (2d Cir. 1999) ("Discriminatory intent or purpose typically refers to those instances when a government actor seeks to disadvantage or negatively impact a group of persons.").

A.      **Plaintiff Fails to Plausibly Allege Defendants Intentionally Discriminated Against Him**

The Complaint fails to plausibly allege Defendants intentionally discriminated against Plaintiff because of his race. Plaintiff alleges no facts demonstrating he was disqualified from the NCPD because of his race. The Complaint does not allege that the CSC Commissioners who disqualified him were aware of Plaintiff's race. *See Laurant v. City of N.Y.*, No. 1 Civ. 5740, 2019 WL 1364230, at *9 (S.D.N.Y. Mar. 26, 2019) (no inference of discrimination where complaint failed to allege defendants were aware of plaintiff's race). The Article confirms that the General Review Reports provided to the CSC do not disclose race. *See* Lesko Decl., Ex. B.  Indeed, Plaintiff was disqualified from the NCPD because his motor vehicle record revealed 14 traffic tickets in a 13-month period, several of which resulted from Plaintiff's repeated failure to remedy prior violations. Such conduct, regardless of any protected characteristic of the applicant, is a disqualifying factor Defendants have previously applied which New York courts uphold.[5]

Plaintiff's allegations, steeped in speculation about how the post-Exam process *could* be administered in a discriminatory manner, are not a substitute for well-pleaded facts that Defendants

---

[5] Plaintiff is not the first potential employee disqualified for similar reasons. Indeed, the County has disqualified other candidates for similar disregard of the law proven by repeat traffic violations. *See supra* at n. 2 (detailing disqualification of white candidates based on their disregard for the law as evidenced by traffic records).

intentionally discriminated against non-white applicants. Plaintiff concludes Defendants' hiring process is discriminatory because it involves "a highly subjective, post-written examination screening process" (Compl., ¶ 8), but fails to allege any facts showing Defendants acted in a discriminatory manner, used their "discretion" to "discriminatorily weed out otherwise qualified non-white applicants," (*id.* ¶¶ 8, 13), or that the numerous testers, interviewers, and evaluators involved at the 2018 post-Exam stages (Physical Agility Test, Background Investigation, Medical Exam, Psychological Exam, Polygraph) exercised discretion uniformly. *See infra*, Point II.C.

Nor does Plaintiff allege it is *not* necessary for the CSC to review an applicant's background to determine whether they have the requisite respect for the process of law and order, or the existence of any better tool to accomplish that necessity.[6]

## B. Plaintiff Failed to Plausibly Allege He Was Treated Differently Than Any Similarly Situated Comparator

Having failed to plausibly allege any direct evidence of discriminatory intent, Plaintiff seeks to infer as much by alleging more favorable treatment of two white candidates ("Proposed Comparators")[7] with records allegedly "far more troubling" than Plaintiff. Compl., ¶¶ 6, 57-67. The Complaint, however, lacks any well-pleaded allegations establishing the Proposed Comparators are similarly situated to Plaintiff, and Count One of the Complaint must be dismissed.

---

[6] "The disparate impact theory of liability rests on the contention that an employer's hiring or promotion 'practices . . . have a disproportionately adverse effect on minorities and are otherwise unjustified by a legitimate rationale.'" *Hernandez v. Off. of the Comm'r of Baseball*, No. 22-343 2023 WL 5217876, at *2 (2d Cir. Aug 15, 2023) (quoting *Tex. Dep't. of Hous. Cmty. Affs. v. Inclusive Cmtys. Proj., Inc.*, 576 U.S. 519, 524-45 (2015)). Here, the Complaint makes no allegation that Defendants' process of assessing a candidate's suitability for hire on an individual basis was unnecessary. Similarly, the Complaint fails to allege any alternative method of effectuating this business necessity.

[7] Plaintiff does not allege the CSC Commissioners knew either Proposed Comparator's race.

"'[A] plaintiff can raise an inference of discrimination by demonstrating the disparate treatment of at least one similarly situated employee outside [his] protected group and sufficient facts from which it may reasonably be inferred that the plaintiff's and comparator's circumstances . . . bear a reasonably close resemblance.'" *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, No. 21 Civ. 695, 2023 WL 2691622, at *18 (S.D.N.Y. Mar. 29, 2023) (quoting *Sutter v. Dibello*, No. 18 Civ. 817, 2021 WL 930459, at *21 (E.D.N.Y. Mar. 10, 2021). To establish an inference of discrimination in this way, a "plaintiff must plausibly allege the existence of at least one comparator who was more favorably treated despite being 'similarly situated to the plaintiff in all material respects.'" *Laurant*, 2019 WL 1364230, at *8 (quoting *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010)).

The two alleged Comparators cannot be comparators for racial discrimination because there is no allegation that the CSC Commissioners knew their race or the race of any other applicant. *See, e.g.*, *id.* at *9.

## C.   Plaintiff's "Statistical Evidence" Fails to Raise an Inference of Discriminatory Intent

"[E]qual protection claims under § 1983 cannot be based solely on the disparate impact of a facially neutral policy." *Reynolds v. Barrett*, 685 F.3d 193, 201 (2d Cir. 2012). In *Martinez v. City of Stamford*, No. 22-702-cv, 2023 WL 3162131, at *2 (2d Cir. May 1, 2023), the Second Circuit announced, "[w]e previously have rejected the proposition that numbers alone serve as evidence of intentional discrimination . . . [w]e adhere to our precedent by rejecting the same proposition here." Prior to *Martinez*, the Second Circuit stated that to prove an Equal Protection violation, statistics must "be of a level that makes other plausible non-discriminatory explanations *very unlikely*." *Burgis*, 798 F.3d at 69 (emphasis added). In *Burgis*, the Court held that statistics

based on "raw percentages" without detail about, *inter alia*, "qualifications of individuals in the applicant pool" do not meet this standard and do not state a claim under § 1983. *Id.* at 70.

These cases notwithstanding, Plaintiff alleges only raw, bottom-line numbers of individuals broken down by demographic, while failing to allege any of the applicants' qualifications. Compl., ¶¶ 96-98, 104, 106-07.[8]

In addition, Plaintiff ignores an obvious and plausible nondiscriminatory explanation for his disqualification—that he thumbed his nose at the law by failing and refusing to remove the tint from his rear windows, brake lights, and license plate. Because Plaintiff offers no allegation under *Burgis* making a nondiscriminatory explanation for his disqualification very unlikely, he fails to state a § 1983 claim.

*Mandala v. NTT Data, Inc.*, 975 F.3d 202 (2d Cir. 2020), *reh'g denied*, 988 F.3d 664 (2d Cir. 2021), articulates the following elements for establishing an unintentional disparate impact claim: "(1) identify a specific practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two." *Id.* at 207 (internal quotations and citation omitted). A plaintiff "must at least set forth enough factual allegations to plausibly support each of the three basic elements[.]" *Id.* at 209. To overcome a motion to dismiss, "statistics must plausibly suggest that the challenged practice *actually* has a disparate impact . . . This means that

---

[8] In *Burgis*, the Second Circuit affirmed the dismissal of a complaint alleging that a recommendation-based promotional system for supervisors unconstitutionally created a supervisory workforce not representative of the racial and/or national origin composition of the sanitation workforce because these statistics showed only raw percentages. In *Starks v. Metro Transp. Auth.*, No. 1:20-cv-09569, 2022 WL 814668 (S.D.N.Y. Mar. 17, 2022), the court ruled that an allegation that only 6 of 96 sergeants were African American could not state a claim for discriminatory intent or a § 1983 violation. *See also Raymond v. City of N.Y.*, 317 F. Supp. 3d 746, 961 (S.D.N.Y. 2018) (finding plaintiff's statistics failed to demonstrate how minority candidates were comparable to white candidates).

the statistical analysis must at the very least focus on the disparity between appropriate comparator groups . . . In other words, the statistical analysis must reveal disparities between populations that are relevant to the claim that plaintiff seeks to prove." *Id*. at 210 (emphasis in original). An analysis of these factors demonstrates the Equal Protection claim must be dismissed.

    (a) *Because the Hiring Process is Comprised of a Series of Divisible Steps, it Cannot be a Specific Employment Practice*

    A plaintiff must identify the specific employment practice allegedly responsible for any observed statistical disparities to state a claim for disparate impact. *See id.*; *see also Smith v. City of Jackson,* 544 U.S. 228, 241 (2005). That is the rule where plaintiffs allege that subjective or discretionary employment practices are challenged. *See Hernandez,* 2023 WL 5217876, at *2-3. Merely alleging that the discretionary system has produced racial disparities is not enough. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 357 (2011).[9]

    The Complaint alleges that discretion in the various steps of the post-Exam process introduces bias resulting in disparate impact. Compl., ¶¶ 8, 13, 92-93. Where there are several distinct steps that make up an overall process, and various stages at which an applicant can pass or fail, there are several distinct ways for an employee potentially to suffer discrimination in that process, and the entire process therefore is not a specific practice. *See Smith*, 544 U.S. at 241; *Loc. 3621*, 2022 WL 17175798, at * 10. Only where a plaintiff alleges facts showing that an entire

---

[9] Conclusory or speculative allegations of "discretion" fail *Twombly.* While Plaintiff alleges candidates undergo a Polygraph, he does not allege facts showing "examiners use the polygraph to solicit disqualifying information." Compl., ¶ 92(i). Nor has Plaintiff alleged either that he underwent a polygraph or any specific times when a polygraph examiner "forcefully . . . press[ed] a candidate to admit to disqualifying behavior." *Id.* And Plaintiff does not explain how investigators "are much tougher and dilatory with applicants of color." *Id.* ¶ 93(b). Plaintiff similarly alleges—with no statistical basis or examples—that the hiring process disqualifies "applicants based on criteria that disproportionately affect non-white communities, for example, marijuana use, high blood pressure, or unpaid parking tickets[.]" *Id.* ¶ 93(j).

process is indivisible may that entire group of steps be a proper specific employment practice. *See Smith*, 544 U.S. at 241.

Plaintiff acknowledges that an applicant can be disqualified at each step in the post-Exam hiring process and alleges no facts showing the steps of Defendants' process are indivisible.[10] Compl., ¶¶ 92, 97, 101-02, 107. And so, as in *Local 3621*, Plaintiff fails to allege a specific practice by reference to an entire multistage process with passing and failing at each step in the process. *See Local 3621*, 2022 WL 17175798, at *10-11.

Under *Mandala*, without properly identifying a specific practice, any allegation about comparator groups and cause and disparity is necessarily implausible and any statistics cited for the improperly described "practice" are insufficient. 975 F.3d at 211-12; *see also Touissant v. City of N.Y.*, 2021 WL 4429316, at *9 (S.D.N.Y. Sept. 27, 2021) ("disparate impact is not established by a simple showing of statistical disparities in an employer's workforce.") (citing *N.Y. State Off. of Mental Health, Manhattan Psychiatric Ctr. v. N.Y. State Div. of Human Rights*, 223 A.D.2d 88 (3d Dept 1996)).

(b)     *Plaintiff's Relevant Comparison is Not Relevant at All*

The *Mandala* Court noted that, in a typical case, the "relevant comparison" is between "the racial composition" of the at issue jobs and "the racial composition of the *qualified* population in the relevant labor market." 975 F.3d at 210. The Court stated general population statistics are a reliable surrogate *only* when there is reason to conclude they "accurately reflect the pool of qualified job applicants for the position in question" (*id*. at 211 (emphasis added)) and it is a "fatal

---

[10] This case is distinguishable from *Brown v. City of N.Y.*, No. 16 Civ. 1106, 2017 WL 1102677 (E.D.N.Y. Mar. 3, 2017), a lawsuit involving promotions within the New York Fire Department. In *Brown* there were several components to the application process—a written test followed by other steps, including an interview, which unlike the CSC's practice, revealed a candidate's race to decision makers. It was that specific discretionary step (the interview) where knowledge of race allowed potential bias, that the plaintiff challenged.

16

flaw" "for Plaintiff to simply presume that population level-statistics will accurately describe subgroups of that population." *Id.*

The Complaint alleges Nassau County general population statistics as comparator groups. Compl., ¶¶ 88-89, 91, 95. But there is no factual allegation regarding why the general population "accurately reflect[s] the pool of qualified job applicants" as required by *Mandala.* And there is no allegation about the qualifications of any individuals in any of the groups cited. The Complaint alleges only applicants who receive a sufficiently high score on the Exam are placed on the Eligibility List. *See* Compl., ¶¶ 92(a) ("The list reflects candidates who may—but not necessarily will—be called in for further processing with their candidacy"). On its face, the Complaint acknowledges the County's general population is not all qualified to join NCPD. For instance, Plaintiff concedes 8393 candidates did not pass the 2012 Exam (*id.* ¶¶ 96-97) and 8066 candidates did not pass the 2018 Exam (*id.* ¶¶ 106-07). Under *Mandala*, Plaintiff's failure to make this allegation is a fatal flaw.

Significantly, Plaintiff does not allege that the Background Investigation is the employment "practice" that caused his injury. He does not set forth any comparator group that includes those who were disqualified during the Background Investigation stage of the hiring process or any means by which the Background Investigation caused a disparity among those who proceeded forward and those disqualified. Nor does Plaintiff allege the qualifications of any applicant— except himself—who participated in the 2018 post-Exam Background Investigation.[11]

---

[11] For disparate impact purposes the identification of a specific employment practice is critical not just for cause and disparity analysis, but also because it frames Plaintiff's burden to propose alternatives once the need for a particular hiring practice is established. Plaintiff makes no such allegations. Rather, he seeks a mechanism to ensure that racial quotas exist and are implemented, such as an order to assure the "hiring process" does not have the "adverse impact" on "the percentages of non-whites in the NCPD as compared to their percentages within the Nassau County population." *See* Compl., **Prayer for Relief** at p. 39.

Under *Mandala*, even within the group of applicants who passed the 2018 Exam and Physical Agility Test, those with a criminal record, poor prior employment performance, or financial distress or improprieties are not within the "pool of qualified job applicants" and would have to be excluded from any comparator groups to which otherwise qualified candidates belong. *See Kassman v. KPMG, LLP*, 416 F. Supp. 3d 252, 282-83 (S.D.N.Y. 2018). Accordingly, Plaintiff has improperly identified the County's general population as the comparator group and, for that reason, the Complaint must be dismissed under *Mandala* and its progeny.

(c)    *Plaintiff's Use of Aggregated Statistics Fails*[12]

Plaintiffs who challenge a system based on discretionary decisions must identify a "common mode of exercising discretion that pervades the entire company." *Dukes*, 564 U.S. at 356. Courts find aggregated statistical evidence inadequate to accomplish this task because it derives from hundreds of discretionary decisions. *See Kassman*, 416 F. Supp. 3d at 282; *Local*

---

[12] To survive a motion to dismiss, under *Iqbal* and *Twombly*, a plaintiff must allege sufficient facts to make a claim plausible and conclusory allegations or conclusions of law are insufficient to accomplish this task. *Iqbal*, 556 U.S. at 678. In the context of a disparate impact claim, a plaintiff must allege facts that are not merely consistent with liability but plausibly show that the employment practice at issue caused the disparity. *Mandala*, 975 F.3d at 207. Plaintiff's allegations fail for two additional reasons. First, the Complaint relies on statistics from the May 27, 2021, Article that use general population numbers as comparators and contain no information about the qualifications of applicants. Compl., ¶¶ 14-15, 111-18, 129. Plaintiff also concedes the 2018 exam cycle hiring steps are "ongoing" (*id.* ¶ 105). Thus, this Court should reject any claim the statistics cited by the Article (*id.* ¶¶ 113-14) are sufficient to establish disparate impact. Second, Plaintiff alleges Defendants violated the Consent Decree by failing to hire percentages of police officers whose race and national origin mirror Nassau County's general population. Compl., ¶¶ 10-12, 76-88, 96-97. In contrast, Paragraph 83 of the Complaint alleges the Consent Decree "did *not* separately address the racial discrimination inherent in the post-exam process—the focus of the instant action—*nor* did it tailor relief to address these particularly acute discriminatory practices." (emphasis added); *see also* Compl., ¶ 10 ("DOJ's complaint focused largely on . . . the written examination"). These contradictory allegations, coupled with Plaintiff's bald request for the imposition of hiring quotas (*see* Compl., ¶¶ 88, 96-97, 105-07), reveal the truth about this lawsuit: it seeks to impose quotas that are unlawful under the Equal Protection Clause. *Regents of the Univ. of California v. Bakke*, 438 U.S. 265 (1978); *Ricci v. Destafano*, 557 U.S. 557 (2009); *Students For Fair Admissions, Inc. v. President and Fellows of Harvard Coll.*, 143 S. Ct. 2141(2023).

*3621*, 2022 WL 17175798, at \*10. Here, Plaintiff fails to identify a "common mode of exercising discretion" because, for instance, he does not allege that those who administered the various steps in the process (i.e., those who administered the Physical Agility Test, together with the investigators conducting the Background Investigations, the medical professionals administering the Medical and Psychological Exams, and those administering the Polygraph) each exercised discretion in a uniform fashion. Indeed, Plaintiff concedes there were differing pass rates for various steps in the post-Exam hiring process. Compl., ¶¶ 99-104. Thus, Plaintiff's use of aggregate statistics fails under *Dukes* (564 U.S. 335) and *Kassman* (416 F. Supp. 3d 252).

      (d)    *Cause and Disparity*

     *Mandala* requires a plaintiff to plead factual allegations showing how a specific employment practice caused disparity to Plaintiff's comparator group. 975 F.3d at 207; *Syeed v. Bloomberg*, 568 F Supp 3d 314, 349 (S.D.N.Y. 2021). Plaintiff does not allege he participated in the 2012 exam cycle and makes no factual allegations that any step in the 2012 post-Exam process caused disparity to any comparator group to which Plaintiff properly belongs. Similarly, the Complaint makes no fact-based allegations about cause or disparity in connection with the 2018 Exam, Physical Agility Test, Medical or Psychological Exams, or Polygraph. Even when he focuses on aspects of the Background Investigation, Plaintiff alleges no statistics related to applicants disqualified based on motor vehicle records, nor does he allege anecdotal evidence about non-white applicants disqualified based on their motor vehicle records. Thus, Plaintiff has failed to properly plead how any employment practice caused disparity to his comparator group.

**Point III**

## COUNT I OF THE COMPLAINT MUST BE DISMISSED AS AGAINST THE COUNTY BECAUSE PLAINTIFF FAILS TO PLAUSIBLY ALLEGE ANY BASIS FOR *MONELL* LIABILITY

"Municipalities are liable under § 1983 only if the challenged conduct occurred 'pursuant to a municipal policy or custom.'" *Green v. Dep't of Educ. of City of N.Y.*, 16 F.4th 1070, 1077 (2d Cir. 2021) (citing *Monell*, 436 U.S. at 658). To state a *Monell* claim the plaintiff must allege: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007). Plaintiff must also allege a "direct causal link between a municipal policy or custom, and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

To satisfy the "policy or custom" requirement, the plaintiff must allege facts showing the existence of (1) a formal policy, (2) actions taken by government officials responsible for establishing policies that caused the particular deprivation, (3) a practice so persistent and widespread that it constitutes a "custom or usage," or (4) a failure to properly train or supervise municipal employees to such an extent that it amounts to a deliberate indifference to plaintiff's constitutional rights. *See, e.g.*, *Buari v. City of N.Y.*, 530 F. Supp. 3d 356, 397-98 (S.D.N.Y. 2021). General and conclusory allegations of a municipal policy or custom are insufficient to state a *Monell* claim. *Li v. City of N.Y.*, 246 F. Supp. 3d 578, 636 (E.D.N.Y. 2017).

Plaintiff interposes three theories of *Monell* liability: (1) a de facto policy or custom through a "persistent and widespread" practice; (2) an action taken by an official with final decision-making authority; and (3) the County's alleged failure to train or supervise its employees. Compl., ¶¶ 144-45. Even if Plaintiff sufficiently alleged an underlying constitutional violation— which he did not (*see* Point II, *supra*)—Plaintiff cannot establish *Monell* liability.

## A.  Plaintiff Fails to Plausibly Allege the Existence of a "Persistent and Widespread Practice"

"To demonstrate a *de facto* policy or custom through a widespread practice, a plaintiff must 'show that the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions.'" *Buari*, 530 F. Supp. 3d at 398 (quoting *Amnesty America v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004)). To prevail on this theory, a plaintiff must prove that the custom at issue is "'permanent and well-settled[.]'" *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167-68 (1970)). "Merely identifying a single instance of alleged misconduct is insufficient to establish a custom or policy by a municipality." *Sauer v. Town of Cornwall*, No. 7:20 Civ. 04881, 2022 WL 4659687, at *5 (S.D.N.Y. Sept. 30, 2022). Indeed, Plaintiff must point to numerous alleged incidents. For example, in *White v. City of N.Y.*, 206 F. Supp. 3d 920 (S.D.N.Y. 2016), the Court ruled that six incidents together with one newspaper article and one lawsuit (alleging similar violations to plaintiff there) were insufficient to establish a widespread practice.[13] In addition, to establish a widespread practice, complaints in other situations must be contemporaneous. *Guston v. Ruiz*, No. 17 Civ. 1252, 2018 WL 3336448, at *6 (E.D.N.Y. Jul. 6, 2018). Plaintiff fails to adequately allege a widespread pattern or practice because he is the only person identified in the Complaint who was allegedly injured by the Defendants' discriminatory hiring practices.

---

[13] *See Ki v. City of N.Y.*, No. 20 Civ. 04343, 2022 WL 5423642, at *6 (E.D.N.Y. Sept. 1, 2022) (three "examples of broadly-defined non-de-escalation or active escalation within the NYPD" insufficient to demonstrate widespread practice or policy); *McLennon v. City of N.Y.*, 171 F. Supp. 3d 69, 95 (E.D.N.Y. 2016) (allegations of six unconstitutional stops does not demonstrate a practice "so widespread as to constitute a municipal custom"); *Tieman v. City of Newburgh*, No. 13 Civ. 4178, 2015 WL 1379652, at *15-17 (S.D.N.Y. Mar. 26, 2015) ("nine lawsuits . . . filed in five years" concerning excessive force "fails to plausibly state that there is a City practice . . . or so widespread to constitute a custom or usage.").

21

While Plaintiff alleges more than 1,000 non-white applicants were disqualified during the 2012 and 2018 post-Exam process (Compl., ¶¶ 98-101, 135), he fails to identify a single instance of discrimination other than his own alleged experience. *See Traino v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 536-37 (S.D.N.Y. 2012) (dismissing *Monell* claim where plaintiff failed to identify "*any* details about other instances of police misconduct" that would suggest a widespread pattern or practice of abuse). Rather, Plaintiff seeks to demonstrate a "widespread practice" by relying on (i) alleged statistical disparities between white and non-white applicants, and (ii) Defendants' purported "violations" of the Consent Decree without describing a single specific instance of the circumstances under which an applicant besides himself was disqualified. Plaintiff's reliance on statistics and the Consent Decree are no substitute for well-pleaded allegations that state a claim for a *Monell* violation.

Although a plaintiff may "plead the existence of de facto customs or policies based on governmental reports documenting constitutional deficiencies or misconduct," (*Felix v. City of N.Y.*, 344 F. Supp. 3d 644, 658 (S.D.N.Y. 2018)), he may do so only if such reports are "sufficiently connected to the specific facts of the case." *Gomez v. City of N.Y.*, No. 16-Civ. 1274, 2017 WL 1034690, at *11 (E.D.N.Y. Mar. 16, 2017). The Consent Decree—entered *more than four decades* ago—is not a "governmental report" documenting a specific constitutional deficiency. Nor is the Consent Decree "sufficiently connected to the specific facts" alleged here. Indeed, the Consent Decree arose from a challenge to the *written* civil service exam administered in 1987 (an earlier iteration of the Exam Plaintiff passed)—not the post-Exam process. *See, e.g.*, *Isaac v. City of N.Y.*, No. 16 Civ. 4729 2018 WL 5020173, at *17 (E.D.N.Y. Aug. 6, 2018) (only reports "sufficiently connected to the specific facts" of the case "and . . . of relatively recent vintage" may be used to bolster *Monell* claims); *see also Gomez*, 2017 WL 1034690, at *11 (rejecting reliance on a 13-

22

year-old report regarding civil actions alleging police misconduct). Defendants' purported violations of the Consent Decree are insufficient to establish the requisite "widespread practice."[14]

## B. Plaintiff Fails to Plausibly Allege the "Final Decisionmaker" Prong of *Monell* Liability

The "final decision maker" analysis dictates that "the decision maker must be responsible for establishing final government policy respecting the particular activity." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). The question is "not whether an official generally has final policymaking authority; rather the court must specifically determine whether the government official is a final policy maker with respect to the particular conduct challenged." *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008).

Plaintiff alleges that the CSC "as a 'final decision maker,' rendered the decision disqualifying Plaintiff and the Class from the hiring process." Compl., ¶ 145(b). But final decision-making authority refers to a single act by an identified individual. And so, where, as here, an individual decision is subject to appeal, Courts have rejected liability under *Monell. See Hurdle v. Bd. of Educ. of City of N.Y.*, 113 F. App'x 423, 426 (2d Cir. 2004); *Bodenmiller v. Cty. of Suffolk*, No. 20 Civ. 00414, 2023 WL 2214037 (E.D.N.Y. Feb. 15, 2023). Plaintiff twice appealed his disqualification, and he neglected to file an Article 78 action to challenge the decision of the CSC.[15]   Plaintiff also alleges that ***all*** Defendants formulated and implemented discriminatory

---

[14] The Consent Decree did not result in a finding of wrongdoing against the County. *See* Consent Decree (Lesko Decl., Ex. E), p. 2 ("[T]his Decree shall constitute neither an admission by the County nor an adjudication by the Court on the merits of the allegations of the United States."). And despite Plaintiff's contrary suggestion, the County "[e]xpressly denie[d] that it presently, or has ever been, engaged in a pattern or practice of discrimination against blacks, Hispanics or females as alleged by the United States." *Id.* at p. 1.

[15] Plaintiff also does not allege the CSC Commissioners knew his race or the race of any other applicant, including the two Proposed Comparators.

23

hiring practices. *See, e.g.*, Compl., ¶ 16 ("Defendants have used discriminatory hiring practices");

¶ 144, ("Defendants adopted subjective hiring criteria"). And the headers used throughout the

Complaint allege that **all** Defendants acted together. *See, e.g.*, Compl., Header preceding paragraph

50, "Appeal of *Defendants'* Disqualification" (emphasis added). And the Complaint seeks relief

against all Defendants, including as to adoption of hiring policies. However, the Complaint does

not allege the existence of any law vesting in CSC final policymaker authority for NCPD hiring,

and it does not make any allegation concerning the policy making authority of Nassau's County

Executive or any individual at NCPD, or the relationship in terms of policy making among and

between Defendants.[16]

    As stated in Point II(A), *supra*, the CSC's alleged disqualification of Plaintiff was not

discriminatory because, among other things, there are no well-pleaded facts establishing (i) CSC

was a policymaker; (ii) CSC Commissioners were aware of Plaintiff's race; or (iii) CSC

Commissioners were aware of the Proposed Comparators' races.

**C.    Plaintiff Fails to Plausibly Allege His Purported Injuries Were Caused by the County's Failure to Train / Supervise**

    To allege a *Monell* claim based on a municipality's alleged failure to train, a plaintiff must

"allege facts that support an inference that the municipality failed to train its police officers, that

it did so with deliberate indifference, and that the failure to train caused his constitutional injuries."

*Tieman*, 2015 WL 1379652, at *22. Under the failure-to-supervise theory, a plaintiff must plead

"(1) there was a pattern of allegations of or complaints about, or a pattern of actual, similar

unconstitutional activity, and (2) the municipality consistently failed to investigate those

---

[16] Plaintiff bears the burden of establishing an official's status as a final policymaker with proof of the official's scope of employment and his role within the municipal organization. *Baity v. Kralik*, 51 F. Supp. 3d 414 (S.D.N.Y. 2014).

allegations." *Treadwell v. Cty. of Putnam*, No. 14 Civ. 10137, 2016 WL 1268279, at \*4 (S.D.N.Y. Mar. 30, 2016) (citing *Tieman*, 2015 WL 1379652, at \*21-22). Merely claiming training would have led to different decisions does not establish municipal liability, *Connick v. Thompson*, 563 U.S. 51, 68 (2011), and Plaintiff does not even allege what training was needed or how it would have helped. *Simms v. City of N.Y.*, No. 10 Civ. 3420, 2011 WL 4543051 (E.D.N.Y. Sept. 25, 2011); *aff'd*, 480 F. App'x 627 (2d Cir. 2012) (to survive a motion to dismiss, a *Monell* complaint must identify the type of training lacking).

The Complaint alleges no factual allegations from which it can be inferred the County failed to train its employees or that this alleged failure was the cause of Plaintiff's purported injuries. Indeed, the sole conclusory allegations of any purported failure are: (i) "Defendants failed to train and/or supervise their agents and representatives to impartially conduct and evaluate the stages of the hiring process," and (ii) "Defendants' selection criteria, improper training, and supervision of individuals involved in the hiring process . . . constitutes a deliberate policy and practice of intentional discrimination." Compl., ¶¶ 145(c), 147. These conclusions, lacking any factual support, are insufficient. *See Aguilera v. Cty. of Nassau*, 425 F. Supp. 2d 320, 324 (E.D.N.Y. 2006) ("To defeat a motion to dismiss for failure to state a claim, the complaint must contain specific factual allegations to support the inference that the municipality failed to train its employees."); *Neighbour v. Covert*, 68 F.3d 1508, 1512 (2d Cir. 1995) ("The mere allegation that the municipality failed to train its employees properly is insufficient to establish a municipal custom or policy."); *McLaurin v. New Rochelle Police Officers*, 373 F. Supp. 2d 385, 401 (S.D.N.Y. 2005) ("An allegation that a municipality was 'deliberately indifferent' to the need to train, monitor, or supervise its employees, without alleging any facts beyond the specific instance

giving rise to his complaint, generally fails to adequately to plead a custom or policy on the part

of the municipality.") (citations omitted).

Plaintiff does not allege what training was lacking or in what ways different training would

have caused the CSC Commissioners not to disqualify him because of his choice to repeatedly

violate the law. Nor does the County's alleged response to the Article establish a "deliberate

indifference" toward any alleged constitutional violation. Compl., ¶ 117. Rather, Defendants

immediately took efforts to remedy perceived racial disparities within the NCPD by, among other

things, creating a diversity task force to improve recruitment and diversity in hiring. *Id.* ¶ 118.[17]

**Point IV**

**COUNTS II AND III ALLEGING DISPARATE TREATMENT AND
DISPARATE IMPACT UNDER THE NYSHRL SHOULD BE DISMISSED**

Because Plaintiff's federal claims must be dismissed (*see* Points I-III, *supra*), the Court

should decline to exercise supplemental jurisdiction over the remaining NYSHRL claims. *See,*

*e.g.*, *Starks*, 2022 WL 814668, at *8 (citing 28 U.S.C. § 1367(c)). Additionally, the Court should

dismiss these counts because Plaintiff fails to plausibly allege claims for disparate treatment and

disparate impact under the NYSHRL.

**A.      The Court Should Dismiss Count II Alleging Disparate Treatment Under the
         NYSHRL**

To state a claim for disparate treatment under the NYSHRL, the plaintiff must allege "(1)

he is a member of a protected class, (2) he was qualified, (3) he suffered an adverse employment

action, and (4) he has at least minimal support for the proposition that the employer was motivated

---

[17] Soon after the Article, the County issued its Police Reform Plan pursuant to Executive Order
203 ("EO203 Report"), which, among other things, details efforts to improve diversity in NCPD
hiring.
EO-203-Reform-Implementation-Updated-Report-June-2021 (nassaucountyny.gov).

by discriminatory intent." *Toussaint*, 2021 WL 4429316, at *6 (citing *Ruiz*, 609 F.3d at 491-92). The Complaint fails to plausibly allege at least two of these elements.

As discussed *supra*, Plaintiff was not qualified to be an NCPD officer because his motor vehicle record shows a "disrespect for the process of law and order" (Compl., ¶ 46)—a disqualifying criterion routinely sustained judicially (*see In re Amato* and *Dais*, *supra*, Lesko Decl., Exs. C and D). Even were Plaintiff qualified, he fails to plausibly allege his disqualification was motivated by discriminatory intent. *See supra* Point II.A, II.C. Because Plaintiff's race was not reported to the CSC Commissioners, he cannot plausibly plead a prima facie case of racial discrimination.

### B. The Court Should Dismiss Count III Alleging Disparate Impact Under the NYSHRL

To state a claim for disparate impact under the NYSHRL Plaintiff "must '(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two.'" *Syeed v. Bloomberg, L.P.*, 568 F. Supp. 3d 314, 345 (S.D.N.Y. 2021) (quoting *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 151 (2d Cir. 2012)). A plaintiff must "set forth enough factual allegations to plausibly support each of the three basic elements of a disparate impact claim." *Mandala*, 975 F.3d at 209.

As explained *supra* at Point II.C, Plaintiff's disparate impact claim necessarily fails.

### Point V

### THE COURT SHOULD DENY CLASS CERTIFICATION OR STRIKE PLAINTIFF'S CLASS ALLEGATIONS BECAUSE THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE AN ENTITLEMENT TO CLASS TREATMENT

Plaintiff's class allegations must be stricken because the Complaint demonstrates Plaintiff—the only purported class representative—cannot meet the commonality and typicality requirements of Rule 23(a). Discovery will not change this fact. Plaintiff is not an appropriate class

representative because, despite alleging he was disqualified during the Background Investigation, he seeks to represent hundreds of non-white applicants disqualified at *any* stage of the 2012 and 2018 Exam cycles, including a class that took a different exam from the one he took. The Court should deny class certification and strike Plaintiff's class allegations.

Rule 23(c)(1)(A) requires this Court to "decide whether to certify a class action '[a]t an early practicable time' after a putative class action is brought." *Talarico*, 367 F. Supp. 3d at 166 (quoting Rule 23(c)(1)(A)) (alteration in original). Where, as here, the "complaint itself demonstrates that the requirements for maintaining a class action cannot be met," the Court may strike the class allegations at any practicable time after the suit has been filed and without further discovery. *See Borgese*, 2021 WL 634722, at *2 (citation omitted); *see also Camacho v. City of N.Y.*, No. 19 Civ. 11096, 2020 WL 4014902, at *3 (S.D.N.Y. July 16, 2020).

To qualify for class certification, a plaintiff must prove by a preponderance of the evidence that the "class meets the four threshold requirements of Rule 23(a); if those requirements are satisfied, [p]laintiffs must also establish that the class is maintainable under at least one of the subsections of Rule 23(b)." *Russell*, 2020 WL 1244804, at *3 (quoting *Teamsters Local 445 Freight Div. Pens. Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008)). The four threshold prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." *Dukes*, 564 U.S. at 348-49 (internal quotations and citation omitted). Because Plaintiff cannot establish commonality or typicality, the Court should deny class certification and strike Plaintiff's class allegations.

Commonality requires "a plaintiff to show that there are questions of law or fact common to the class." *Dukes*, 564 U.S. at 349 (citing Fed. R. Civ. P. 23(a)(2)). While "[a]ny competently

crafted class complaint literally raises common questions," the commonality requirement under Rule 23(a) "requires the plaintiff to demonstrate that the class members have suffered the same injury" and to demonstrate that "their claims must depend upon a common contention." *Id.* at 350. "That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Dukes*, 562 U.S. at 350 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

Similar to commonality, "[t]ypicality requires that the claims of the class representatives be typical of those of the class, and is satisfied when *each member's claim arises from the same course of events*, and each class member makes similar legal arguments to prove the defendant's liability." *Barrows v. Becerra*, 24 F.4th 116, 131–32 (2d Cir. 2022) (emphasis added). "Typicality ensures that class representatives have the proper incentive to prove all elements of the cause of action that would be presented by individual members of the class if they were pursuing their own individualized actions." *Hill v. City of N.Y.*, No. 13 Civ. 6147, 2019 WL 1900503, at *6 (E.D.N.Y. Apr. 29, 2019); *In re PPDAI Grp. Inc. Sec. Litig.*, No. 18 Civ. 6716, 2022 WL 198491, at *6 (E.D.N.Y. Jan. 21, 2022) (finding commonality and typicality "tend to merge").

Here, the dissimilarities between the purported class members are plentiful. Plaintiff purports to represent a class of "all non-white applicants seeking to become Nassau County police officers who were disqualified for consideration by Defendants during the post-exam process" in both 2012 and 2018. Compl., ¶¶ 132-33. But as discussed in Point I, *supra*, Plaintiff's allegations demonstrate it is impossible for Plaintiff to certify such a class because Plaintiff passed the

Physical Agility Test (*id.* ¶ 40), and because he was disqualified during the Background Investigation (*id.* ¶ 46), he never took the Polygraph, Psychological or Medical Exams. Nor did Plaintiff participate in the 2012 exam cycle at all. Moreover, Plaintiff's disqualification was based on individualized circumstances further distinguishing him from even those disqualified during the Background Investigation.[18] Very simply, Plaintiff shares no commonality with any purported class member other than those disqualified based on a traffic record demonstrating disrespect for the requirements and processes of law.[19] Likewise, typicality is lacking because each class member's claim necessarily arises from different events and disqualifying reasons.

Even if the putative class were to be narrowed only to those who failed the Background Investigation (a request not before this Court), there is no question that individualized inquiries will abound. The fact finder will need to examine every applicant's reason for disqualification and make a subjective judgment call regarding whether the applicant engaged in conduct that was more, less or equally egregious as Plaintiff. This Court should not be called upon to be a super-personnel department to second guess CSC well-reasoned conclusions. *See Murphy v. Potter*, No.

---

[18] *See Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of N.Y.,* No. 18-CV-4476 (LJL), 2022 WL 17175798 (S.D.N.Y. Nov. 22, 2022) (finding no commonality where allegedly discriminatory hiring practice impacted each applicant uniquely on an individual basis rather than universally on a class wide basis). The County continues to hire from the 2018 test. Compl., ¶¶ 105, 107-08. And so, there are no final hire numbers or accurate statistics about pass rates for any group, however defined, participating in the process. Previously, starting in 2012, the County went through a similar multi-step process which concluded in 2019. Compl., ¶ 7. Plaintiff did not participate in that process, so there is no plaintiff before this Court who participated in the 2012 process alleging the 2012 process was discriminatory. It is only Plaintiff who complains he is a victim of discrimination in the 2018 exam cycle and the Complaint points to details about the circumstances of alleged discrimination for only one individual–Plaintiff.

[19] Where a plaintiff has not suffered an adverse employment action at each step of a hiring practice, with pass and fail at each step, he is not a proper class representative for a class challenging the steps in which he did not participate. *See Loc. 3621*, *2022* WL 17175798, at *10 (finding no commonality where proposed class members do not appear to have "common answer to the crucial question *why was I disfavored*").

06 Civ. 1989, 2008 WL 2433615, at *11 (E.D.N.Y. Jun. 12, 2008) (noting the Second Circuit and many other circuits hold it is not the role of a federal court to act as a super-personnel department to second-guess the fairness or wisdom of a particular business decision by an employer) (collecting cases).

The reason Plaintiff was disqualified is as unique as the class he seeks to represent, and there is no single person whose application process was common or typical of a wide swath of the others. And Plaintiff cannot plausibly allege that his claims or defenses are typical of the class members. Because Plaintiff fails to meet the commonality and typicality requirements of Rule 23(a) it is not necessary to analyze the requirements of Rule 23(b), which Plaintiff cannot satisfy (Compl., ¶¶ 140-41) for the same reasons he cannot demonstrate commonality or typicality.[20]

---

[20] Rule 23(b)(2) permits an injunctive class when "the party opposing the class has acted or refused to act on grounds that apply generally to the class." *Id*. "[T]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that is can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 122 (S.D.N.Y. 2012) (internal citations removed). Because there are various stages of the post-Exam process when a purported class member could be disqualified, each disqualification is necessarily unique and based upon individualized circumstances. Disqualifications during the Physical Agility Test, for example, are inherently distinguishable from those resulting from the Medical Exam. And even disqualifications resulting from a failed Background Investigation are based upon individualized circumstances unique to the specific candidate. Given the individualized nature of the claims, it cannot be said that Defendants have "acted or refused to act on grounds that apply generally to the class." *Dukes*, 564 U.S. at 360 (holding that Rule 23(b)(2) does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant).

Plaintiff's proposed class allegations also do not meet Rule 23(b)(3)'s requirements "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*. There is no generalized proof to resolve the question of whether each component of the post-Exam process produces a discriminatory result as the evidence necessary to establish bias during the Physical Agility Test is different from that needed to establish as much for the Background Investigation. Assuming, as one must, that members of the purported class were disqualified at different stages of the post-Exam process, "the Court would be required to conduct a series of mini-trials," to determine for each candidate, whether the disqualification was unreasonable." *Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 142

ACTIVE 690810732v2

The class allegations must be stricken for another, more fundamental reason. Plaintiff "fail[ed] to identify a single member of the purported class other than [him]self," *PFT of Am., Inc. v. Tradewell, Inc.*, No. 98 Civ. 6413, 1999 WL 179358, at *1 (S.D.N.Y. Mar. 31, 1999), and failed to allege that an investigation was conducted "to determine if there are other class members before filing this action." *Id*. The allegations here fare no better than those in *PFT*. Plaintiff sets forth only conclusory allegations about the existence of other class members. While it is alleged that "non-white applicants have been disqualified at an alarming rate," (Compl., ¶ 7), Plaintiff fails to include specific allegations about the circumstances of discrimination against them. Without more, the Complaint does not establish a plausible entitlement to class certification. *See Goldberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 97 Civ. 8779, 1998 WL 321446, at *9 (S.D.N.Y. June 18, 1998), *aff'd sub nom, Goldberg v. Merrill Lynch*, 181 F.3d 82 (2d Cir. 1999). Accordingly, this Court should deny class certification and strike Plaintiff's class allegations.

### Point VI

### THE COMPLAINT MUST BE DISMISSED AS AGAINST THE NCPD AND THE CSC

"[A]gencies of a municipality are not suable entities because '[u]nder New York law, departments that are merely administrative arms of a municipality have no separate legal identity apart from the municipality and therefore cannot be sued.'" *Chodkowski v. Cty. of Nassau*, No. CV 16-5770, 2017 WL 10637956, at *5 (E.D.N.Y. Nov. 30, 2017) (quoting *Perez v. Ponte*, 236 F. Supp. 3d 590, 630 (E.D.N.Y. 2017)).

Courts routinely dismiss claims against the NCPD and the CSC on the ground that such entities are "administrative arms" of the County lacking legal capacity to be sued. *See Chodkowski*,

---

(S.D.N.Y. 2003). "Under these circumstances, a class action is not a feasible, let alone superior, method" for the fair, efficient, and manageable adjudication of the putative class's claims. *Id*.

2017 WL 10637956, at *5 (dismissing claims against both the NCPD and CSC because they are "administrative agencies" of the County); *Gurrieri v. Cty. of Nassau*, No. 2:16-Civ. 6983, 2017 WL 3432208, at *6 (E.D.N.Y. Aug. 9, 2017) (same); *Arciello v. Cty. of Nassau*, No. 16 Civ. 3974 (E.D.N.Y. Feb. 17, 2017) (same); *McJunkin v. Suffolk Cty. Civ. Serv.*, No. 13 Civ. 5045, 2014 WL 3490720, at *2 (E.D.N.Y. Jul. 10, 2014) (same); *Rose v. Cty. of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012) (dismissing § 1983 claims against the NCPD).

Thus, the Complaint must be dismissed in its entirety as against the NCPD and the CSC.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety, or, in the alternative, deny class certification and strike Plaintiff's class allegations.

Dated: Garden City, New York
October 12, 2023

GREENBERG TRAURIG, LLP

By: ___s/ *Mark J. Lesko*___

Kathryn C. Cole
Tiffany S. Fordyce *(pro hac vice)*
Mark J. Lesko
Jonathan L. Sulds
John R. DiCioccio
Paige D. Bartholomew
900 Stewart Avenue, 5th Floor
Garden City, New York 11530
(516) 629-9600

*Attorneys for Defendants*
*County of Nassau, Nassau County*
*Civil Service Commission and*
*Nassau County Police Department*