**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

WRITER'S DIRECT DIAL NUMBER

(212) 373-3250

WRITER'S DIRECT FACSIMILE

(212) 492-0250

WRITER'S DIRECT E-MAIL ADDRESS

lreisner@paulweiss.com

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

SUITES 3601 – 3606 & 3610
36/F, GLOUCESTER TOWER
THE LANDMARK
15 QUEEN'S ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

535 MISSION STREET, 24TH FLOOR
SAN FRANCISCO, CA 94105
TELEPHONE (628) 432-5100

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W. ABBOTT
EDWARD T. ACKERMAN
JACOB A. ADLERSTEIN
JUSTIN ANDERSON
ALLAN J. ARFFA
JONATHAN H. ASHTOR
ROBERT A. ATKINS
SCOTT A. BARSHAY
PAUL M. BASTA
LYNN B. BAYARD
JOSEPH J. BIAL
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
BRIAN BOLIN
ANGELO BONVINO
ANDRE G. BOUCHARD*
PAUL D. BRACHMAN
GERALD BRANT
ROBERT A. BRITTON
WALTER F. BROWN*
SUSANNA M. BUERGEL
JESSICA S. CAREY
JOHN P. CARLIN
DAVID CARMONA
GEOFFREY R. CHEPIGA
ELLEN N. CHING
WILLIAM A. CLAREMAN
LEWIS R. CLAYTON
YAHONNES CLEARY
REBECCA S. COCCARO
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
TIHITINA DAGNEW
THOMAS V. DE LA BASTIDE III
MEREDITH R. DEARBORN*
KAREN L. DUNN
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
HARRIS FISCHMAN
KATHERINE B. FORREST
VICTORIA S. FORRESTER
HARRIS B. FREIDUS
MANUEL S. FREY
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
NEIL GOLDMAN
MATTHEW B. GOLDSTEIN
ROBERTO J. GONZALEZ*
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRIAN S. GRIEVE
UDI GROFMAN
MELINDA HAAG*
ALAN S. HALPERIN
CLAUDIA HAMMERMAN
IAN M. HAZLETT
BRIAN S. HERMANN
JOSHUA HILL JR.
MICHELE HIRSHMAN
JARRETT R. HOFFMAN
ROBERT HOLO
CHRISTOPHER HOPKINS
DAVID S. HUNTINGTON
AMRAN HUSSEIN
LORETTA A. IPPOLITO
WILLIAM A. ISAACSON*
JAREN JANGHORBANI
BRIAN M. JANSON
LUKE JENNINGS
JEH C. JOHNSON
MATTHEW B. JORDAN
CHRISTODOULOS KAOUTZANIS
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY
ROBERT A. KILLIP
BRIAN KIM
KYLE J. KIMPLER
JEFFREY L. KOCHIAN
ALEXIA D. KORBERG
DANIEL J. KRAMER
ANDREW D. KRAUSE

BRIAN KRAUSE
CAITH KUSHNER
KAISA KUUSK
DAVID K. LAKHDHIR
GREGORY F. LAUFER
BRIAN C. LAVIN
XIAOYU GREG LIU
RANDY LUSKEY*
LORETTA E. LYNCH
JEFFREY D. MARELL
MARCO V. MASOTTI
DAVID W. MAYO
ELIZABETH R. MCCOLM
JEAN M. MCLOUGHLIN
ALVARO MEMBRILLERA
MARK F. MENDELSOHN
CLAUDINE MEREDITH-GOUJON
WILLIAM B. MICHAEL
SEAN A. MITCHELL
ERIN J. MORGAN
JUDIE NG SHORTELL*
CATHERINE NYARADY
JANE B. O'BRIEN
BRAD R. OKUN
SUNG PAK
CRYSTAL L. PARKER
LINDSAY B. PARKS
ANDREW M. PARLEN
DANIELLE C. PENHALL
CHARLES J. PESANT
ANASTASIA V. PETERSON
JESSICA E. PHILLIPS*
AUSTIN S. POLLET*
VALERIE E. RADWANER
JEFFREY J. RECHER
LORIN L. REISNER
JEANNIE S. RHEE*
ANDREW N. ROSENBERG
JUSTIN ROSENBERG
JACQUELINE P. RUBIN
RAPHAEL M. RUSSO
ELIZABETH M. SACKSTEDER
JEFFREY B. SAMUELS
PAUL L. SANDLER
AARON J. SCHLARHOFF
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JOHN M. SCOTT
BRIAN SCRIVANI
KYLE T. SEIFRIED
KANNON K. SHANMUGAM
SUHAN SHIM
CULLEN L. SINCLAIR
MAURY SLEVIN
KYLE SMITH
AUDRA J. SOLOWAY
SCOTT M. SONTAG
JOSHUA H. SOVEN*
MEGAN SPELMAN
ROBERT Y. SPERLING
EYITAYO ST. MATTHEW-DANIEL
SARAH STASNY
AIDAN SYNNOTT
ROBERT D. TANANBAUM
BRETTE TANNENBAUM
RICHARD C. TARLOWE
DAVID TARR
MONICA K. THURMOND
DANIEL J. TOAL
LAURA C. TURANO
CONRAD VAN LOGGERENBERG
KRISHNA VEERARAGHAVAN
JEREMY M. VEIT
LIZA M. VELAZQUEZ
MICHAEL VOGEL
RAMY A. WAHBEH
ANDREA WAHLQUIST BROWN
JOHN WEBER
THEODORE V. WELLS, JR.
SAMUEL J. WELT
LINDSEY L. WIERSMA
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
MARK B. WLAZLO
ADAM WOLLSTEIN
STACI YABLON
BOSCO YIU*
KAYE N. YOSHINO
TONG YU
TAURIE M. ZEITZER
KENNETH S. ZIMAN
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

December 13, 2023

**BY ECF**

Honorable Lee G. Dunst
United States Magistrate Judge
Eastern District of New York
100 Federal Plaza, Courtroom 830
Central Islip, New York 11722

       Re: *Myers* v. *County of Nassau et al.*, 2:22-cv-07023-OEM-LGD

Dear Magistrate Judge Dunst:

       Pursuant to your Honor's Individual Practice Rule IV.D, the parties jointly submit this letter motion in connection with Plaintiff's motion to compel Defendants to produce documents responsive to Plaintiff's First Set of Document Requests dated August 16, 2023 ("RFPs," attached hereto as Ex. 1), pursuant to Fed. R. Civ. P. 37(a)(3)(B).

**Plaintiff's Position**

Plaintiff respectfully requests that the Court compel Defendants to produce: (i) demographic information requested in Plaintiff's Document Request numbers 2, 3, 8, 9, and 10 (*i.e.*, the total number of applicants to the Nassau County Police Department ("NCPD") that participated in, passed, or failed any selection qualification including during the Post-Exam Process, with a numerical breakdown by race for each selection qualification) ("Demographic Data"), and (ii) documents concerning NCPD hiring processes, procedures, guidance, and criteria pertaining to the hiring process, including background investigations, responsive to request numbers 2, 4, and 15 ("Hiring Policy Documents"). Plaintiff is seeking only Demographic Data and Hiring Policy Documents since 2018 as part of Phase One Discovery. Despite repeated requests, and notwithstanding Defendants' statements below, Defendants have failed to produce the requested material. Plaintiff's motion to compel should be granted because the information requested is readily available (it is basic information and is required to be maintained under the ongoing Consent Decree) and is central to Plaintiff's claims. Contrary to Defendants' assertion that this information is merely "confirmatory," this information will demonstrate, among other things, the gross imbalance in the racial composition of the NCPD, the disproportionate disqualification of non-white applicants in the highly discretionary Post-Exam process (including the background check process), and the lack of reasonable and objective criteria in the background check and Post-Exam process.[1]

During the August 31 Initial Conference, the Court ruled that Phase One Discovery should proceed, and Plaintiff preliminarily identified Plaintiff's first ten Document Requests as "core" requests. On September 15, 2023, Defendants served their responses and objections to the RFPs. (Ex. 2, Sept. 15, 2023 Resp. and Obj. to the RFPs (the "R&Os").) Defendants objected to producing any of the core requests, except for Plaintiff's application file and so-called quarterly "affirmative action reports" since January 2018. Defendants represented that these reports contained information responsive to a number of Plaintiff's Requests. (*See, e.g.*, R&O Nos. 2, 3, 4, 8, 9, and 10.) Plaintiff agreed to accept these documents in the first instance subject to review and further discussion.

On November 1, 2023, the Court denied Defendants' motion to stay discovery. Two days later, on November 3, 2023, counsel for Defendants informed Plaintiff's counsel that Defendants are "unable to locate the 2018 affirmative action reports" because the

---

[1] The requested information is the proper subject of Phase One discovery because it will provide "evidence supporting claims" asserted by Plaintiff, is tailored to "avoid unnecessary expense and delay," and would help "put the matter into a meaningful settlement posture." *See* Individual Practice Rule IV.B. Defendants' assertion that it consists of "class discovery" is incorrect because statistical evidence as sought here is routinely used to prove *individual* discrimination claims. *See, e.g.*, *Brown* v. *City of New York*, 2017 WL 1102677, at *4 (E.D.N.Y. Mar. 23, 2017); *Malave* v. *Potter*, 320 F.3d 321, 327 (2d Cir. 2003). Moreover, data concerning each stage of the Post-Exam Process is directly relevant to Plaintiff's claim that a pattern and practice of bias and discrimination infects all components of the process.

"County employee who was responsible for the reports at that time is no longer employed by the County." (*See* Ex. 3, Nov. 3, 2023 Email from M. Lesko.) Defendants further stated that the "affirmative action report data is a snapshot in time, live and organic, and nothing historical is backed up," and they cannot provide "the historical data and can only attempt to provide in excel (or another format) the data as it exists today." (*Id.*)

On November 10, 2023, Plaintiff responded to Defendants' November 3 email, setting forth various production deficiencies. (Ex. 4, Nov. 10, 2023 Letter.) In particular, Plaintiff asked Defendants to provide additional information relating to the "missing" affirmative action reports, including why and for how long Defendants had apparently been deleting and overwriting data required to be preserved under the Consent Decree. Plaintiff also explained that the affirmative action reports do not include essential categories of requested demographic data, including demographics of the NCPD applicant pool (presumably because that information would be found in the missing 2018 reports considering that was the last time NCPD offered a written examination) and those disqualified during various phases of the application process responsive to RFP Nos. 8 and 9. In addition, Plaintiff requested that Defendants produce the Hiring Policy Documents, which are responsive to RFP Nos. 2, 4, and 15.[2] Plaintiff noted that, even if the 2018 affirmative action reports could not be located, Defendants must have access to the substantive information Plaintiff is seeking in some other form, given that: (i) Defendants are under a continuing obligation to retain "all documents, records or other memoranda pertaining to the recruitment, selection, hire, assignment, transfer, promotion, demotion, discipline and termination of all personnel in the NCPD" pursuant to the Consent Decree; and (ii) Defendants were able to provide information concerning the "racial and ethnic breakdown of candidates" in response to FOIL requests. (*Id.* at 2-3 nn.1 & 3.) Plaintiff's November 10 letter requested that Defendants propose a time and date for a meet-and-confer as soon as possible.

After Defendants did not respond, Plaintiff sent a follow-up email on November 17 and a meet-and-confer session was scheduled for November 21. (Ex. 5, Nov. 17 Emails.) On November 21, nine minutes before the meet-and-confer was scheduled to begin, Defendants asked to re-schedule due to the unavailability of a member of their outside counsel team. A meet-and-confer session took place on November 22. At that time, Plaintiff explained that there are fundamental deficiencies in Defendants' production to date. *First*, the documents produced by Defendants (including the so-called affirmative action reports) do not contain essential demographic information requested in the RFPs (including information on those disqualified during the various phases of the application process). *Second*, the affirmative action reports produced by Defendants are incomplete based on Defendants' admitted inability to locate at least a year's worth of the reports. *Third*, Defendants have failed to produce the Hiring Policy Documents requested in the RFPs, including a failure to produce any policies, procedures, regulations, guidance or criteria related to the background investigation performed as part of the selection process.

---

[2]  Defendants' assertion that Plaintiff purportedly abandoned the request for these materials is groundless. Plaintiff has not abandoned and is not abandoning the request for these materials.

Defendants responded that they would attempt to recreate the 2018 affirmative action reports from data available, but that the process would take at least six weeks. Defendants refused to provide any additional information concerning the circumstances of the missing 2018 affirmative action reports or why they previously told Plaintiff that the underlying data was unavailable. When told again that the affirmative action reports do not contain essential demographic information requested in the RFPs (such as the number of applicants disqualified based on selection criteria including the background check process), Defendants refused to produce any additional responsive information. Defendants also refused to produce any of the Hiring Policy Documents. Defendants contended that the requested material should not be considered part of Phase One discovery and stated that they intend to renew their motion to stay discovery.

The refusal by Defendants to produce the requested materials is groundless and Defendants should be compelled to produce the requested materials immediately. *First*, the so-called affirmative action reports are fundamentally deficient because they do not contain key demographic information requested in Plaintiff's RFPs (including information on the demographics of the applicant pool and those disqualified during various phases of the application process) and are incomplete (they do not include any reports from 2018).

*Second*, the documents produced by Defendants in response to FOIL requests and partially re-produced in response to the RFPs are insufficient for the following reasons: (i) the statistical data regarding the various phases of the Post-Exam Process was "current" only through 2020 and has not been supplemented, thus Plaintiff lacks complete and current data for the 2018 Post-Exam Process; (ii) the statistical data does not identify the total number of applicants who participated in and passed the various phases of the Post-Exam Process broken down by race for either the 2012 or 2018 Post-Exam process; and (iii) the statistical data does not include the number of applicants who failed to appear for or failed to participate in each phase of the Post-Exam process.[3]

Accordingly, Plaintiff respectfully requests that the Court compel Defendants to produce the materials described above.

---

[3] The FOIL information must be supplements as follows to be responsive to the requests that are the subject of this motion to compel: (i) for the 2012 Examination Process, broken down by race: (a) the number of applicants who participated in each phase of the Post-Exam Process; (b) the number of applicants who passed each phase of the Post-Exam Process; and (c) the number of applicants who failed to appear for each phase of the Post-Exam process; and (ii) for the 2018 Examination Process, information from after 2020 to the present showing, broken down by race: (a) the number of applicants invited for further processing (i.e. the number of applicants invited to begin the Post-Exam process); (b) the number of applicants invited for further processing who completed the Post-Exam Process; and (c) the number of applicants who participated in, passed, failed, and failed to appear for each phase of the Post-Exam Process. While Defendants assert that they should not be required to produce this data because it is not "readily available," Defendants have made no showing of burden and Defendants' counsel conceded during the December 6 meet-and-confer that it would take about a week to collect it.

**DEFENDANTS' POSITION**

Pursuant to your Honor's Individual Practice Rule IV(B)(2) and (3), Phase One discovery ("Phase One") shall be "carefully tailor[ed]" to "avoid unnecessary expense and delay," to allow the parties to "enter into meaningful settlement discussions." Despite this clear directive, Plaintiff seeks to expand impermissibly the scope of Phase One to include class discovery under the guise of a motion to compel. Indeed, during a December 6th meet and confer, counsel for Plaintiff advised that the documents now sought are merely "confirmatory" of the demographic data Defendants have previously produced.[4] Further, Plaintiff fails to explain why this material is necessary for meaningful settlement discussions rather than being purely cumulative. Accordingly, Plaintiff's motion should be denied.

Notwithstanding Plaintiff's suggestions to the contrary, Defendants have not outright refused to produce additional discovery materials. Rather, to understand Plaintiff's position, Defendants requested, on multiple occasions, that Plaintiff explain why the documentation sought is: necessary for Phase One; relevant to his claims as defined by the Complaint; and not duplicative since the Affirmative Action Reports ("Reports") together with additional discovery produced by Defendants provides the demographic information Plaintiff now seeks. After several meet and confers, Plaintiff responded only that the data and information he seeks would confirm the data and information he has already received in discovery; and that a settlement demand would be forthcoming. Nevertheless, Defendants have complied with their obligations under Phase One and have produced the readily available documentary evidence responsive to Plaintiff's "core" discovery requests.

**I.      The Parties' Meet and Confer Process.**

An initial meet and confer was scheduled for November 21, 2023, at 4:30 p.m., but a medically necessary and unexpectedly protracted procedure required the meet and confer to be rescheduled for the next morning at 9:00 a.m. During that telephone conference, Defendants reiterated that while the 2018 Reports were not readily available, their contents could be manually reproduced, and that manual process was underway. Moreover, Defendants offered to expedite the reproduction of any 2018 report Plaintiff deemed more relevant—that offer went without response. Defendants also explained that the demographic data sought by Plaintiff was previously produced by Defendants as part of their rolling production of Phase One discovery and requested Plaintiff explain why that data, in addition to the Reports, was insufficient. When pressed, counsel for Plaintiff advised he was under no obligation to provide a response and offered only that the FOIL documents produced were "imperfect." Despite repeated requests, he offered no further detail or explanation. During that same call, Defendants further advised they were

---

[4] Despite Plaintiff's mischaracterization, it was Plaintiff's counsel who specifically stated during the most recent meet and confer that the documents now sought are "confirmatory." Additionally, Plaintiff's contention in FN1 is flatly contradicted by *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 151 (2d Cir. 2012).

prepared to discuss what specific information Plaintiff needed to facilitate meaningful settlement discussions, but Plaintiff ignored the offer and refused to provide any context on how the documents sought are relevant to settlement efforts.

On November 27th, Defendants received Plaintiff's position for this letter motion and provided their responsive position within the time established by the Court's local rules. On December 4th, Plaintiff sent a revised draft of his position (seemingly in response to Defendants' arguments) and offered to meet and confer in light of those revisions. The parties engaged in an additional meet and confer on December 6th, during which Defendants again sought clarity on the documents and information Plaintiff sought and how those materials would enable the parties to engage in a meaningful settlement discussion. Plaintiff responded only that the documents and data now sought would confirm the demographic data he already had; and that a settlement offer would be forthcoming. When responding to Defendant's inquiry on December 6th as to what documents were sought, Plaintiff did not identify the Hiring Policy Documents (*see supra*) as being in dispute and, thus, has either abandoned such request or failed to meet and confer in good faith about that request.[5]

## II. The Readily Accessible Data and Documents Have Been Provided and Plaintiff's Request is Cumulative and Burdensome.[6]

At the Initial Conference held on August 31, 2023, Plaintiff identified his "first ten Document Requests as 'core' requests." *See supra.* Thereafter, Plaintiff admittedly "agreed to accept production of the 'affirmative action reports' since 2018…" in connection with Defendants' Phase One obligations.[7] *Id.* Accordingly, Defendants produced, on October 18, 2023, the first of several rolling productions totaling nearly 8,000 pages. Now, in what appears to be a fishing expedition, Plaintiff seeks data and information that surpasses the scope and purpose of Phase One.

---

[5] Additionally, to the extent that Plaintiff seeks to compel the Hiring Policy Documents responsive to Request No. 15, that Request exceeds the scope of what counsel identified at the Initial Conference and subsequently as a core request.

[6] Plaintiff summarily states without support of citation that the materials requested are "readily available." He is mistaken. *See* fn., *infra*.

[7] Plaintiff was advised on November 3, 2023, that Defendants were unable to locate the 2018 Reports in hardcopy. In explaining why Defendants could not simply recreate the Reports, Defendants advised that the database from which the Reports are generated reflects current, real time information. As such, the 2018 data, which is historical, exists in other sources. Defendants advised they would undertake the burdensome task of manually reproducing the 2018 Reports using those other sources – a task estimated to take up to six weeks, and one which had already begun. Defendants updated Plaintiff during the parties' December 6th meet and confer and confirmed the process was underway and would take less than the six weeks previously estimated. And while Defendants are not obligated to create responsive documents or produce in Phase One information that is not readily available, Defendants have begun to do so for the limited purpose of the 2018 Reports, and without waiver of any relevant objection regarding other data or documents.

Plaintiff alleges he lacks certain demographic data that is purportedly both relevant to his allegations of racial discrimination in hiring and necessary for settlement discussions. More specifically, Plaintiff seeks "demographic data," defined by Plaintiff (*see supra*) as a "numerical breakdown by race" of all applicants who "participated in, passed or failed" each stage of Defendants' hiring process, responsive to Req. Nos. 2-3 and 8-10. However, even a cursory review of the thousands of pages of documents produced demonstrates Plaintiff has received all readily available data. An illustrative, but not exhaustive, chart of the readily available demographic data Defendants have produced is attached hereto as Exhibit D-1. Plaintiff takes issue with this data because it is "current" only through 2020. However, as Defendants explained to Plaintiff, that data was "readily available" because it was previously hand-collated by a County employee in response to extensive FOIL requests pre-dating the Complaint. And, despite Plaintiff's urging to the contrary, Defendants have no obligation under Phase One to create documents that are not otherwise "readily available."[8]

Further, Plaintiff now takes a position that is diametrically opposed to that advanced in his motion papers, making it plain that he is on a mere "fishing expedition." *Pothen v. Stony Brook Univ.,* 2017 WL 1025856, at *2 (EDNY 2017) ("the party seeking discovery must make a prima facie showing, that the discovery is more than merely a fishing expedition."). Specifically, Plaintiff previously argued that Defendants' hiring process, across both the 2012 and 2018 hiring cycles, is incapable of separation into its various components for evaluation under a disparate impact standard or *Monell* liability.[9] This argument renders unnecessary and irrelevant data relating to each stage of Defendants' hiring process. Yet, changing tack, Plaintiff now demands that very information for each step in the process. During the parties' December 6th meet and confer, Plaintiff's counsel contended that he "was not limited" to the aggregated statistics derived from each step of the 2012 and 2018 hiring cycles, and the requests were not cumulative because the data *could* identify discrimination at a particular step. Similarly, it is apparent from Plaintiff's motion that the 2018 Reports are not essential to his claims. It is an odd posture where Plaintiff contends the Reports "do not contain essential demographic information requested…" (*see* Plaintiff's position, *supra*) but simultaneously asks the Court to compel production of the 2018 Reports.

---

[8] Defendants do not retain the data in the format sought by Plaintiff in the ordinary course of business (i.e., a breakdown by race of applicants who did not appear for, failed, or passed each phase of the post-Exam process by year). And so, it is not "readily accessible." Indeed, compliance with Plaintiff's demand would require a full time County employee to be relegated to this task in dereliction of their current duties.

[9] Plaintiff previously argued that he is not challenging a specific exam, but rather the post-exam process generally; and, because the hiring cycle has not been updated since 2012 both it and the same 2018 hiring cycle raise the same concerns. Significantly, Plaintiff has complete data for the 2012 hiring cycle.

8

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
*Counsel for Plaintiff*

By: _/s/ Lorin L. Reisner_
Lorin L. Reisner


GREENBERG TRAURIG, LLP
*Counsel for Defendants*

By: _/s/ Mark J. Lesko_
Mark J. Lesko