PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 Avenue of the Americas
New York, NY 10019-6064
+1 212 373 3000

**Liza Velazquez**
**Direct Dial:** +1 212 373 3096
**Email:** lvelazquez@paulweiss.com

Brussels
Hong Kong
London
Los Angeles
San Francisco
Tokyo
Toronto
Washington, D.C.
Wilmington

July 11, 2025

**VIA ECF**

Honorable Lee G. Dunst

United States District Court, E.D.N.Y.
100 Federal Plaza, Courtroom 830
Central Islip, New York 11722

Re: *Myers* v. *County of Nassau*, No. 22-cv-07023-SJB-LGD (E.D.N.Y.)

Dear Magistrate Judge Dunst:

Pursuant to the Court's June 4, 2025, Order, the parties, by their respective counsel, respectfully submit this Joint Status Report.

**Document Productions and Written Discovery**

On May 16, 2025, Defendant served responses to Plaintiff's April 16, 2025, Second Set of Interrogatories, and on June 2, 2025, Defendant served responses and objections to Plaintiff's First Requests for Admission, Fourth Set of Document Requests, and Third Set of Interrogatories. On June 16, 2025, Plaintiff and Defendant met and conferred to discuss Defendant's responses to these discovery requests. On June 26, 2025, Plaintiff sent Defendant a letter requesting that Defendant amend or supplement certain responses. Defendant responded by letter on July 8, 2025. The parties continue to meet and confer about two issues relating to Defendant's responses to Plaintiff's Second Set of Interrogatories and Fourth Set of Document Requests:[1]

---

[1] Following the parties' meet and confer process regarding Defendant's responses to Plaintiff's First Requests for Admission, Defendant indicated that it intends to serve amended Responses and Objections by July 14, 2025.

1. Plaintiff's Second Set of Interrogatories

    a. Interrogatory No. 17 -- Plaintiff's Position

Plaintiff's Second Set of Interrogatories requested that Defendant provide the number of applicants by calendar year who started the post-exam hiring process, and who failed, passed, or withdrew from each phase of the post-exam hiring process, or were hired as a police officer in Nassau County. The charts provided by Defendant in response are incomplete. In particular, the number of applicants in the charts who started the background investigation process exceeds the total number of individuals listed as having passed, failed to appear, or been disqualified. In addition, the number of applicants in Defendant's charts do not match the number of applicants in the documents that Defendant produced. Although Defendant has acknowledged that it has additional data that would account for these discrepancies (including data concerning disqualifications and withdrawals during the background investigation stage), Defendant has thus far refused to provide this information.

Relatedly, Plaintiff also asked Defendant to update the chart it produced on January 23, 2024, in response to the Court's December 20, 2023, court order, which included data for all applicants in the 2018 hiring cycle through the end of 2023. Plaintiff requested updated data through the end of 2024. Defendant has taken the position that it is not required to provide an updated document under the terms of the Court's prior order or the interrogatory request referenced above.[2]

    b. Interrogatory No. 17 – Defendant's Position

Interrogatory No. 17 states: For each calendar year during the 2018 Hiring Cycle, set forth the number of individuals, broken down by race, who: a. started the post-exam hiring process; b. failed to appear for the Physical Agility Test; c. passed the Physical Agility Test; d. failed the Physical Agility Test; e. started the Background Investigation process; f. failed to appear for the Background Investigation; g. passed the Background Investigation; h. were disqualified during the Background Investigation for "cause"; i. withdrew from the hiring process after passing the Background Investigation; j. passed the Medical/Psychological Examination; k. failed the Medical Examination; l. failed the Psychological Examination; m. were hired by the Nassau County Police Department and/or by any police department in Nassau County.

---

[2] While Defendant asserts that Plaintiff "seeks data that does not exist" because no applicant from the 2018 hiring cycle began the post-exam process during the 2024 calendar year, this is incorrect. The chart that Defendant produced on January 23, 2024 is "current through 2023"; Plaintiff is simply requesting that Defendant update the data in that chart so it is current through the end of the 2018 hiring cycle.

Defendant fully responded to the interrogatory as written, providing information relating to the background investigation phase (the only phase of the post-exam process Plaintiff has standing to challenge), including the racial and numerical breakdown of candidates who (i) started the post-exam process, (ii) started the background investigation process, (iii) failed to appear for the background investigation, (iv) passed the background investigation, (v) were disqualified for "cause", (vi) withdrew from the background investigation, and (vii) were hired by NCPD. That the information sought purportedly resulted in "discrepancies" is the result of Interrogatory as written and Plaintiff's failure to account for other possibilities during the post-exam process. Plaintiff did not timely seek, for example, the number of candidates who: withdrew from the post-exam process before passing the background investigation; were disqualified during the background investigation for reasons other than "cause"; or failed to comply with requests for information after passing the physical agility test. Because Interrogatory No. 17 did not seek this information—which, if timely sought, may have accounted for the purported "discrepancies"—it was not provided. And Plaintiff's efforts to secure this information after the close of discovery is improper. Plaintiff also suggests Defendant is unwilling to provide an "updated" chart, but Defendant has informed Plaintiff it has produced all relevant data and confirmed there is no additional data for the 2024 calendar year because no applicant from the 2018 hiring cycle began the post-exam process during the 2024 calendar year. And so, Plaintiff seeks data that does not exist.[3]

2. Plaintiff's Fourth Set of Requests for Production

    a. Vehicle Stop Data – Plaintiff's Position

As Plaintiff's Complaint alleges, criteria relied upon by Defendant in disqualifying NCPD applicants reflect discrimination and discriminatory practices, including driving history. *See* ECF No. 1 at ¶ 93(j) (stating that "the disqualification of applicants based on criteria that disproportionately affect non-white communities, for example, marijuana use, high blood pressure, or unpaid parking tickets, discriminates against non-white applicants"); ECF No. 1 at n.9 (stating that the NCPD arrests Black people at a rate 5.3 times higher than white people).[4]

---

[3] Plaintiff's assertion that he "is simply requesting that Defendant update the data in that chart so it is current through the end of the 2018 hiring cycle," ignores the text of Interrogatory 17. The categories of information requested in Interrogatory 17 are different than the categories contained in the January 23, 2024 chart that Plaintiff references. Plaintiff makes a disingenuous comparison to dispute the data provided in response to Interrogatory 17, when Defendant's position has been consistent that it has produced all data in response to the categories requested in Interrogatory 17.

[4] Defendant's assertion that Plaintiff does not dispute the traffic tickets issued to him eight years before his background investigation misses the point entirely. As these allegations demonstrate, Plaintiff is challenging his disqualification by Defendant purportedly on

Accordingly, Plaintiff's Fourth Set of Requests for Production sought data and records underlying the Vehicle Stop Data published by Nassau County pursuant to Executive Order 203 to examine whether and how the consideration of driving history in the hiring process may disproportionately impact certain racial groups. This vehicle stop data, which has already been collected by Defendant, is readily available and highly relevant to an analysis of the racial impact of vehicle stops.

To date, Defendant has refused to produce any of the underlying vehicle stop data and has stated that producing this data will be burdensome, including because the raw data contains personally identifying information. Plaintiff is not seeking personal identifying information ("PII") and is willing to accept the export of this data into an Excel file, as Defendant suggests, from which any columns containing PII could be removed entirely.

      b. Vehicle Stop Data – Defendant's Position

Plaintiff seeks "the raw vehicle stop data for the period January 1, 2021, to the present" (Request Nos. 6-7), and the "raw Vehicle Stop Data and Pedestrian Stop Data for the period January 1, 2021, to the present." *Id*. Nos. 8-9. When counsel spoke on June 16, 2025, Plaintiff was directed to the EO 203 Reports publicly available on the County's webpage that contain the requested data from the second half of 2021 to the present. Defendant objects to the production of the underlying data that form these Reports on several bases including relevance, proportionality, and burden. Specifically, the vehicle and pedestrian stop data is not relevant to any allegation in the Complaint. Indeed, there are no allegations in the Complaint about vehicle or pedestrian stops in Nassau County generally, involving applicants to the 2018 hiring cycle, or involving Plaintiff specifically (except for the few background allegations related to the traffic stops wherein Plaintiff was properly ticketed). Significantly, Plaintiff testified that all the traffic tickets issued to him were properly issued and are not disputed. *See* Plaintiff Dep. Tr., 261:20-262:2.

Moreover, as provided in the EO 203 Reports, each year tens of thousands of summonses are issued: 35,324 summonses issued in the second half of 2021; 68,008 summonses issued in 2022; 88,902 summonses issued in 2023; and 75,903 summonses issued in 2024. That the Civil Service Commissioners consider Vehicle & Traffic Law citations and violations when evaluating a police officer candidate does not render County-wide vehicle and pedestrian stop data relevant or proportional. As ample testimony from various depositions made plain, the citations and violations the Commissioners considered are reflected in the GRRs—each of which has been produced, along with a race correlation chart. Confoundingly, the Requests for Vehicle Stop Data do not align with the 2018 hiring cycle, and thus do not correspond to

---

account of his driving history as well as Defendant's reliance on hiring criteria that reflect discrimination.

the allegations in the Complaint. Plaintiff lacks standing to assert any cause of action based on these irrelevant summonses.

Moreover, it would be unduly burdensome for Defendant to produce data for hundreds of thousands of irrelevant summonses. Production of the raw data would entail extracting from a database and exporting data into a Microsoft Excel file where each line would correlate to a traffic stop – the vast majority of which are not relevant. The data includes personal identifying information ("PII") for *every* traffic stop in Nassau – including tens of thousands of individuals who have never been a candidate to the NCPD. The production of this PII is not appropriate (*see CFTC v. Gorman*, No. 21-cv-870 (VM), 2022 U.S. Dist. LEXIS 184661, at *2 (S.D.N.Y. Oct. 4, 2022)), and significant redactions—including redacting one's name, address, date of birth, and driver's license number—would be required. This exercise is burdensome, especially because the information contained in the Excel file is irrelevant to Plaintiff's claims, and to the extent relates to a police officer candidate to the 2018 hiring cycle, duplicative of information contained in the previously produced GRRs. Moreover, Plaintiff states that he is willing to accept the information without PII which is exactly what the publicly available EO 203 Reports provide—total summonses issued by the Nassau County Police Department broken down by race.

* * *

The parties will continue to meet and confer in an effort to resolve these outstanding issues, but may need Court intervention.

**Expert Depositions**

As provided in the Court's November 17, 2024, and January 2, 2025 Orders, the parties will meet and confer about: (i) the scheduling of expert depositions for any expert reports exchanged during class certification briefing; and (ii) any renewal by Plaintiff of his request for leave to submit reply expert reports.

Respectfully submitted,

| | |
|---|---|
| PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, *Counsel for Plaintiff* | GREENBERG TRAURIG, LLP, *Counsel for Defendant* |
| By: */s/ Liza M. Velazquez* <br>　　　Liza M. Velazquez | By: */s/ Kathryn C. Cole* <br>　　　Kathryn C. Cole |