PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

BRUSSELS
HONG KONG
LONDON
LOS ANGELES
SAN FRANCISCO

TOKYO
TORONTO
WASHINGTON, DC
WILMINGTON

August 22, 2025

**VIA ECF**

Honorable Lee G. Dunst
United States Magistrate Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

Re: *Myers* v. *County of Nassau*, No. 22-cv-07023-SJB-LGD (E.D.N.Y.)

Dear Magistrate Judge Dunst:

Pursuant to the Court's July 13, 2025, Order, the parties, by their respective counsel, respectfully submit this Joint Status Report.

## Plaintiff's Status Statement[1]

### Case Activities and Deadlines

*Motion for Class Certification*. In accordance with the Court's June 20, 2025 Order, Plaintiff's Motion for Class Certification and related papers (the "Class Cert. Motion") were served on Defendant on August 15, 2025. *See* ECF No. 97.

Under the Court's order, (i) any supplemental targeted discovery by Defendant after receipt of Plaintiff's Class Cert. Motion is due to be completed by September 15, 2025; (ii) Defendant's opposition to the Class Cert. Motion is due to be served by October 15, 2025; (iii) any supplemental targeted discovery by Plaintiff after receipt of Defendant's brief in opposition to the Class Cert. Motion is due to be completed by November 10, 2025; and (iv) Plaintiff's reply papers in support of the Class Cert. Motion are due to be served by November 24, 2025.

Pursuant to Judge Bulsara's rules, Plaintiff is scheduled to file the Class Cert. Motion, any opposition or reply, and all related papers, including any sealing motions, on the docket by November 24, 2025. The parties will meet and confer concerning their views on any

---

[1] Plaintiff provided Defendant with a proposed joint status report on August 21, 2025. At 4:20 p.m. on the date the joint status report was due, Defendant returned a version entirely deleting Plaintiff's report regarding Defendant's belated production. Accordingly, given the timing and consistent with the parties' practice in prior status reports, Plaintiff proposed submitting separate statements.

necessary sealing or redaction of the Class Cert. Motion or related papers in advance of that date.

*Expert Discovery*. As also provided in the Court's June 20, 2025 Order, the parties exchanged initial expert reports on August 15, 2025. Plaintiff served three expert reports, and Defendant served two reports. Pursuant to Federal Rule of Civil Procedure 26(a)(2)(B)(ii) and a stipulation between the parties, the parties simultaneously served materials cited in the reports, including articles, books, studies, and other cited materials. The parties have further agreed to discuss the reciprocal exchange of data and materials (including but not limited to spreadsheets, codes, and/or algorithms) supporting the tables reflected in each expert report.

Under the Court's June 20, 2025 Order, (i) rebuttal expert reports are scheduled to be exchanged by October 15, 2025; and (ii) expert discovery (except as relates to damages) is ordered to be completed by December 10, 2025.

The parties will meet in good faith to discuss several outstanding issues including the scheduling of expert depositions, and, as provided in the Court's November 17, 2024 and January 2, 2025 Orders, any renewal by Plaintiff of his request for leave to submit reply expert reports, and the issues noted above.

In connection with setting the briefing and expert disclosure schedule, the Court reminded the parties of their obligations to secure the "just, speedy, and inexpensive determination of every action and proceeding," placing the parties on notice that the Court would be "reluctant to extend deadlines any further in this case . . . absent a timely showing of good cause." June 20, 2025 Order.

**Document Productions and Written Discovery**

Fact discovery closed on June 16, 2025. *See* June 2, 2025 Order. On August 13, 2025, two days before the August 15 deadline for expert reports and the filing of Plaintiff's Class Certification motion, Defendant produced additional documents potentially relevant to those reports and the motion. In particular, Defendant produced a new General Review Report ("GRR") for a Nassau County Police Department applicant and an "updated correlation chart" with information relating to additional applicants and their race/ethnicity. These materials were served more than fourteen months after the Court's May 30, 2024 order requiring the production of GRRs for all applicants that underwent the background investigation phase of the 2018 hiring cycle (the "Background Investigation"), *see* ECF No. 52 at 4, ten months after the Court's order of October 31, 2024 requiring production of unredacted GRRs, *see* ECF No. 73, and long after the close of fact discovery.[2]

---

[2] Defendant has produced "correlation charts" corresponding to its productions of GRRs that identify the race of each referenced applicant.

Defendant claims the belatedly produced GRR "was inadvertently not produced" and that the only change to the "updated correlation chart" was "to reflect this one additional GRR." Email from K. Murray to J. Tatoy on Aug. 13, 2025. Defendant's description of the new correlation chart is inaccurate. In fact, the "updated correlation chart" has more than 170 newly-listed entries in addition to those that were listed on the correlation chart most recently produced by Defendant on July 31, 2025. *Compare* NASSAU-00047199 (correlation chart produced on August 13, 2025, listing 1,401 entries) *with* NASSAU-00047198 (correlation chart produced on July 31, 2025 listing 1,228 entries).

Plaintiff's counsel is continuing to analyze the "updated correlation chart," but preliminary analysis indicates that it contains GRRs that Defendant previously suggested were irrelevant and "not discoverable," as well as GRRs other than those that Defendant expressly confirmed were the GRRs for applicants who either "were approved or were disqualified during the background investigation" phase of the 2018 hiring cycle. Email from K. Cole to J. Tatoy on April 7, 2025; Email from K. Cole to J. Tatoy on Feb. 12, 2025; Email from K. Cole to J. Tatoy on Nov. 19, 2024.

The belated production of these documents on the eve of the deadline for expert reports and Plaintiff's Motion for Class Certification may result in unfair prejudice, undue burden, and unnecessary costs incurred by Plaintiff and Plaintiff's counsel. Plaintiff is evaluating whether to seek, among other things, additional discovery related to the newly disclosed material, an order precluding the use of these belatedly produced documents by Defendant, fees and costs incurred based on this late production and other appropriate relief.

### Defendant's Status Statement

Plaintiff served its Motion for Class Certification on August 15, 2025 (the "Motion"). Likewise, the parties exchanged expert disclosures on the same day. The conclusions of one or more of the experts disclosed by Plaintiff are critical to Plaintiff's being granted the relief sought in the Motion. As a result, Defendant, is assessing whether it will file a motion requesting that the Court amend the briefing schedule for Plaintiff's Motion to allow Defendant to first challenge the opinions pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S 579 (1993). A ruling on this threshold issue of whether Plaintiffs' experts' opinions should be excluded may be necessary to the Court ruling on class certification. Defendant does not anticipate that this issue will impact the current expert discovery schedule.

Defendant will attempt to engage Plaintiff to meet and confer on this issue, as well as additional discovery required for Defendant to oppose class certification, and will seek Court intervention only if necessary.

In regard to the document production section of Plaintiff's portion of this Joint Status Report, the reality is that Defendant produced approximately 1,352 unique General Review Reports ("GRR") throughout the course of this litigation. In connection with finalizing its expert reports, defense counsel learned, for the first time, that they were not in possession

of one, single GRR. Defense counsel promptly secured the one GRR, and produced it to Plaintiff, consistent with its obligations pursuant to Federal Rule of Civil Procedure 26(e), on August 13, 2025. Simultaneously, Defendant produced an updated race correlation chart[3] which, on information and belief, contained one substantive update—the race of the applicant whose GRR Defendant produced on August 13. The race correlation chart also consolidated charts that had previously been produced by Defendants into one chart for ease of reference. However, on information and belief, the underlying substantive information did not change.[4] Defense counsel explained these facts to Plaintiff's counsel on August 22, 2025.

In response to receiving a proposed Joint Status Report from Plaintiff on August 21, 2025, Defendant responded the following day to what it believed would be a routine filing notifying the Court of the status of the case, with proposed revisions, explained in detail by email why several of Plaintiff's material assertions about Plaintiff's supplemental production of a GRR were incorrect and/or misleading, and offered to discuss the Joint Status Report. The first time that Plaintiff's counsel agreed to speak with defense counsel about the content of this Joint Status Report was approximately 10:00 p.m. EST on August 22, 2025, at which point they rejected defense counsel's proposal to provide a truncated Joint Status Report to the Court.

Respectfully submitted,

| | |
|---|---|
| PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, *Counsel for Plaintiff* | GREENBERG TRAURIG, LLP, *Counsel for Defendant* |
| By: */s/ Liza M. Velazquez*<br>　　　Liza M. Velazquez | By: */s/ Tiffany S. Fordyce*<br>　　　Tiffany S. Fordyce |

---

[3] The race correlation chart was necessary to inform Plaintiff of the race of the applicant because GRRs do not identify an applicant's race.

[4] On information and belief, prior race correlation charts separated applicants who were hired or disqualified by the County from applicants who withdrew from the process, or otherwise failed to cooperate. The August 13, 2025 race correlation chart combined all of these applicants into one single race correlation chart, and did not contain any additional or new information not previously disclosed, except in relation to the one GRR referenced herein.